## CITY OF ST. LOUIS, trustee, v. EDWARD C. CROW, Attorney-General, Appellant.

Division One, December 24, 1902.

1. **Equity: PRAYER: GENERAL RELIEF.** Unless the petition in an equity case states facts entitling the plaintiff to some relief, and unless those facts, if denied, are established by the proof in the case, there can be no judgment for plaintiff, even though there is a prayer for general relief.

2. ————: PRACTICE: FINAL JUDGMENT: RETENTION OF CAUSE: SUBSEQUENT DECREE. A court of equity has not, any more than a court of law, authority to pronounce a final judgment and then hold the case open for further adjudication on its merits. And so much of a decree as attempts, after an adjudication against the plaintiff on all points then in litigation, to retain jurisdiction of the case with a view of granting such relief as a further showing and a matured plan for handling a trust fund may authorize, is of no validity, and furnishes no basis for a subsequent special order diverting the fund from the literal use to which it was originally appropriated. In such case if the court is of the opinion that upon a proper showing the plaintiff may be entitled to some relief not authorized at the

time its first decree finding "the issues for the defendants and against all the prayers of the plaintiff" was rendered, then it should dismiss the bill without prejudice.

3. ———: ———: ———: ———: APPEAL. In such case after a final judgment, an appeal may be taken from any order of the court attempting to retain jurisdiction of the cause for further adjudication on the merits.

4. ———: ———: ———: ———: ADMINISTRATIVE PURPOSE. An equity court after it has pronounced judgment on the matter in litigation may retain the cause for administrative purposes and to carry the decree into effect. But it can not find all the issues for defendants and then suggest in its decree that upon a proper showing it would grant a certain relief, and retain the cause in order to permit the plaintiff to make such showing on further petition, and then when such petition and showing are brought in grant a relief not indicated in the original petition. In such case the original judgment will be held to be a final judgment and an end to the litigation, without prejudice to bring another suit.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

REVERSED AND REMANDED (*with directions*).

*Edward C. Crow,* Attorney-General, and *G. B. Webster* for appellant.

(1)   No effort has been made to lease the property, and, therefore, no impossibility can be said to exist. There must be shown such impracticability as will evidence, from real, earnest effort, a substantial impossibility.   Lackland v. Walker, 151 Mo. 266.   (2)   Mere probable advantage is not sufficient.   Atty.-Gen. v. Worcester, 9 Hare 361; Atty.-Gen. v. Stewart, L. R. 14 Eq. 17; In re Suir Island School, 3 Jones & L. 171; Hospital v. Stamford, 60 L. T. Rep. 289; In re Mason's Orphanage, 1 Ch. 54; Baker v. Smith, 13 Met. 34; Winthrop v. Atty.-Genl., 128 Mass. 258; Woman's Home v. Campbell, 147 Mo. 103; Lackland v. Walker, 151 Mo. 268.   The question of sale is one of existing exigency, not expediency.   Cary Library v. Bliss, 151 Mass. 375.

Vol 171 mo—18.

*Eugene McQuillin* for respondent.

(1)   The decree from which this appeal is taken is not final respecting the terms and manner of sale, but in this particular stands, in effect, as the original decree, made July 28, 1899.   Therefore, under the statute, this court has no jurisdiction to hear and determine this appeal.   R. S. 1899, sec. 806.   (2)   The trial court possesses power to order a sale of the property involved.   Chambers v. St. Louis, 29 Mo. 543; Academy of Visitation v. Clemens, 50 Mo. 167; Goode v. McPherson, 51 Mo. 126; Howe v. Wilson, 91 Mo. 45; Missouri Historical Society v. Academy of Science, 94 Mo. 459; Barkley v. Donnelly, 112 Mo. 561; Stanley v. Colt, 5 Wall. 119; Franklin v. Armfield, 2 Sneed (Tenn.), 305; Barr v. Weld, 24 Pa. St. 84; Brown v. Meeting Street Baptist Church, 9 R. I. 177.   (3)   The court not only possessed the power, but under the circumstances, as shown by the record, it was its plain duty to order the sale, in the interest of the trust estate, ''on such terms and in such manner'' as the court might thereafter designate.   (4)   The question of the sale is only one of existing exigency, as contradistinguished from expediency, where the donor has expressly or impliedly declared that the property shall remain inalienable.   Lackland v. Walker, 151 Mo. 268; Cary Library v. Bliss, 151 Mass. 375.

VALLIANT, J.—The city of St. Louis, as trustee under the will of Bryan Mullanphy, deceased, brings this suit in equity, seeking a decree authorizing it to divert the trust fund of property from the literal use to which the will appropriates it, to the building, establishing and maintaining a hospital for the indigent sick, especially those who fill the description of persons aimed to be cared for in the will.

Bryan Mullanphy died in 1851 leaving one-third of his large estate to the city of St. Louis ''in trust to be and constitute a fund to furnish relief to all poor emigrants and travelers coming to St. Louis on their

way, bona fide, to settle in the west.'' After his .death that clause of the will was the cause of litigation between his heirs and the city, which was terminated by the decision in Chambers v. St. Louis, 29 Mo. 543. In that decision it was held that the clause in question was a valid devise in trust for a charitable use, and that the city was competent to administer the trust.

The petition in this case gives a history of the management of the trust property by the city from the date of the decision in the case above referred to (1860) up to April 1, 1898, which was a few days before the filing of this suit. From the petition it appears that in 1860 the real estate set apart to the city for this trust, in the partition of the estate, was worth $500,000; that from that date to April 1, 1898, the trustee had collected through its board of managers as revenue from the property $949,547.87, out of which it expended the sum of $211,755.96 for the relief of ''poor emigrants and travelers,'' and all the rest was consumed in the expense of administration.

The petition states: ''That from September 1, 1895, to April 1, 1898, inclusive, the total receipts aggregated the sum of $74,256.15 and of this sum but $5,548.67 were paid out for the relief of poor emigrants and travelers; that from September 1, 1895, to April 1, 1898, inclusive, the total expenditures aggregated the sum of $49,599.33, and during said period of time but $5,548.67 were expended for the relief of poor emigrants and travelers as aforesaid. Plaintiff avers that like comparisons of the receipts and also of the expenditures with sums paid out for the relief of poor emigrants and travelers for other given periods, shows like results; that the said sums paid out for relief of poor emigrants and travelers have been very small as compared with the receipts, as well as compared with the expenditures made in keeping and preserving the trust estate.''

. The personal property belonging to the estate at the date of filing the petition was stated to be of the value of $52,937.53. The real estate is set out by descript-

ion in the petition showing much of it to be unproduct-
ive, and needing improvement to render it available for
use.   It is stated also that at the date of the will there
was a large movement of population from the east
through St. Louis towards the then new western terri-
tories; that there were many emigrants who filled the
class contemplated in the will, and it was practicable
to ascertain the persons among them who were entitled
to the testator's bounty, but that now conditions were
changed, there were few of that class coming, and it has
been practically impossible to determine whether any
given person falls within the classification.

The petition then suggests that a purpose nearest
to the original charity named in the will would be ac-
complished by selling all the trust property and apply-
ing its proceeds to building and maintaining a hospital
bearing the testator's name and devoted first to caring
for indigent sick persons coming to St. Louis aiming in
good faith to reach a new home farther west, and after
that to caring for other poor sick people.   The prayer
of the bill is in accordance with that suggestion.   Issues
being joined the cause came on for trial and a decree
was rendered July 28, 1899.   In that decree the court
made a general finding in these words: "The court
doth find the issues for the defendants and against all
the prayer of the plaintiff's petition, and finds more
particularly as follows."   Then follows certain special
findings among which are these:

"Fourth. The court finds that in the management
of said estate large expenditures are necessary, which
are altogether out of proportion to the sums conferred
in benefits, namely, the amounts given to poor emigrants
and travelers coming to St. Louis on their way, bona
fide, to settle in the west; that this results from the poor
location and dilapidated condition of such real estate,
which constantly requires heavy expenditures in the
way of repairs, and that the rentals arising therefrom
are not adequate.

"Fifth. The court finds that the number of emi-
grants and travelers provided for by the will of said

testator, is not so large as in former years, and is grow-
ing smaller, but in the opinion of the court is not likely
to cease altogether; that the total net income of the trust
estate is no longer needed for the specific purpose desig-
nated by said testator; that there are from time to time
found within the limits of said city of St. Louis, num-
bers of poor sick persons, non-resident strangers, help-
less and without assistance, who need charitable aid,
and deserve it."

Then the court decrees that the city of St. Louis
as trustee be empowered "to sell such portions or all
of the property belonging to the trust estate at such
time and on such terms as the court may hereafter de-
termine, and that the surplus, arising from the sale of
said property, beyond what may be necessary to prop-
erly provide for the persons designated by said testator,
shall be used for the purpose of erecting and maintain-
ing a hospital to be known as the Bryan Mullanphy
Hospital, in which shall be cared for non-resident poor
sick persons found within the limits of said city," etc.,
etc.

After that paragraph in the decree is this: "The
court finds that by reason of the condition of the real
estate market within the city of St. Louis at present
it would be inadvisable to decree the sale of all the prop-
erty of said trust estate or any considerable part there-
of, but that in the near future such sale may be proper
and advantageous to said trust estate. . . . The
court, therefore, retains jurisdiction of this case for
said purpose of making such further orders, decrees and
judgments as may seem lawful and proper in the pre-
mises."

It then goes on to declare that either party may,
on giving certain notice to the other, bring the matter
to the attention of the court and ask for such further
orders, etc.

Pursuant to that clause in the decree the plaintiff
afterwards presented a petition to the court represent-
ing that certain parcels of the real estate held for this
trust should be sold for the reason that some of it was

vacant, some improved but in poor location and in dilapidated condition, and on the whole the revenue arising from it was less than the necessary expenditures to hold and preserve it, and that it would be advantageous to the estate to dispose of it.   Due notice was given of this proceeding and the matter came on for hearing on the proof.   There was evidence for and against the proposition that it would be advantageous to sell.   The court after hearing the evidence rendered on November 19, 1900, what in the briefs is called a decree wherein it is recited that the court found the issues for the plaintiff and found that it would be to the interest of the trust estate to sell certain parcels of the land ''on such terms and in such manner as the court may hereafter designate,'' and thereupon the court appointed three commissioners to view and examine the property and report its condition, etc., and adjudged that the trustee pay the cost of the proceeding.

The defendant moved for a rehearing on that petition, which motion the court overruled at the next December term, and at the same time modified the order or decree of November 19, 1900, excepting from the proposed sale five certain parcels of the property and directing that the board of managers use the proceeds of the sales of the rest, or so much thereof as may be necessary, in erecting suitable improvements on the five excepted lots ''whenever in the judgment of said board the erection of such improvements or buildings is deemed advisable.''

The cause comes to this court on appeal of the Attorney-General.

The first point advanced by respondent is that the order from which the appeal is taken is not a final judgment, and that therefore this court has no jurisdiction.

What is said by the counsel in support of this point applies with as much force to the decree of July 28, 1899, as to the order of November 19, 1900; if the reservations in the latter constitute it an interlocutory or provisional order, those in the former render it also an

interlocutory decree; the one essays to retain the case for further adjudication as clearly as does the other. Counsel on both sides, however, treat the decree of July 28, 1899, as a final judgment, and we will defer to their view of it.    If that was a final decree the order from which this appeal is taken is a "special order after final judgment in the cause" from which section 806, Revised Statutes 1899, provides an appeal may be taken.

The question as to the validity of the order of November 19, 1900, carries us back to the decree of July 28, 1899, upon which the latter order is based and necessitates an investigation into the force and effect of that decree.    When that decree is sifted down to the grain, the only adjudication we can make out of it is that, under the pleadings and proof, the plaintiff was not entitled to the relief prayed, or to any relief; true it does go on to say that thereafter when other conditions and circumstances shall be shown, the plaintiff may be entitled to some relief, which is therein vaguely foreshadowed, but that on the showing then made the plaintiff would take nothing by its suit. The decree starts out with the usual prefatory recitals, as in case of final hearing, of the coming on for trial, the appearance of the parties, the submission of the cause on the pleadings and proof, and the court being fully advised, etc., then follows a recital that "the court doth find the issues for the defendants and against all the prayers of the plaintiff's petition."

It is difficult to see how any decree for the plaintiff could be built on that foundation.    A prayer for particular relief in an equity case does not always limit the relief to which the plaintiff may be entitled, if there is also a prayer for general relief.    But unless the petition states facts entitling the plaintiff to some relief, and unless those facts, if denied, are established by the proof in the case, there can be no judgment for the plaintiff. In this case the court declares not only that the plaintiff is not entitled to the relief prayed, but also finds all the issues in favor of the defendants.    What

was there left in the case for the plaintiff? But the decree goes on to recite certain special findings upon which it declares that the plaintiff trustee is empowered to sell all or such portions of the trust property when and upon such terms as the court may thereafter determine, the proceeds to be invested in a hospital. That is to say, not now nor at any definite or determinable period, but in the indefinite hereafter when a more satisfactory showing may be made and the court may see its way clear to so order, the plaintiff may sell, not in a manner nor on terms now indicated, but such as may then, if ever, seem to the court judicious. Is that an adjudication of a right in the plaintiff to sell and invest or is it only a promise of such an adjudication to be made thereafter when the conditions shall have changed or the chancellor may be more fully advised? As if to emphasize the fact that no right to sell was intended to be adjudged, the decree in a subsequent clause declares that owing to the condition of the market "it would be inadvisable to decree a sale of all of the property of the said trust estate or any considerable part thereof, but that in the near future such sale may be proper," etc. The pleadings and recitals in the decree show very clearly that the learned chancellor was of the opinion that the plaintiff trustee should not then be empowered by a decree to dispose of the trust property as prayed in the petition, but that he was so favorably impressed with the *cy pres* suggestion that he purposed to retain the bill with leave to the plaintiff to come again when it might come with a matured scheme, and a reasonably definite showing that a sale of the property could be effected without sacrifice and a sum be thereby realized sufficient to accomplish the purpose suggested.

It is agreeable to the course of equity jurisprudence for the court, after it has pronounced judgment on the rights in litigation, to retain the bill for administrative purposes and to make orders to carry the decree into effect. But a court of equity has not, any more than a court of law, authority to pronounce a final judgment

and then hold the case open for further adjudication on its merits.  If the purpose was as above indicated the decree should have been that the bill be dismissed without prejudice to the plaintiff's right to bring its suit again when conditions might become more propitious.  As it is, it is in effect a decree for the defendant and an adjudication against the plaintiff on all the points then in litigation, and so much of the decree as purports to retain jurisdiction of the case for further adjudication is of no validity and furnishes no foundation for the subsequent proceedings under which the order of November 19, 1900, was made nor for any subsequent proceedings in this case.

This record shows that more than three-fourths of the income of this trust property has been consumed in expenses of its administration and that in spite of that fact the property has, much of it, been suffered to fall into decay, deteriorate in condition and depreciate in value.  The proceedings subsequent to the decree of July 28, 1899, above mentioned, indicate a purpose now to inaugurate a course of selling off, as occasion may from time to time require, portions of the property to raise funds to maintain the rest.  That was not the purpose of the petition in this case and there is nothing in the decree of July 28, 1899 to sanction it.  We interpret that decree to be a final judgment for the defendant and the end of the litigation, without prejudice to the plaintiff's right to bring another suit of the same nature, when it is prepared to show that the property can be sold without sacrifice and a sum sufficient to insure the accomplishment of its purpose can be realized.  The proceedings in this case subsequent to the decree of July 28, 1899, were without authority and the orders or decrees therein are invalid.  The order or decree of November 19, 1900, and its modification in December following are reversed and the cause remanded with directions to the circuit court to dismiss all the proceedings in the case subsequent to the decree of July 28, 1899.  All concur.