# WARREN et al., Appellants, v. MANWARRING.

### Division Two, March 17, 1903.

1. **Tax Deed:** JUDGMENTS: INVALID ASSESSMENT. A judgment of a circuit court in a tax suit, if otherwise valid, is not rendered invalid by an erroneous assessment. Such erroneous assessment is, at most, an irregularity of which the defendant taxpayer can not avail himself in a collateral proceeding, such, for instance, as a suit in ejectment by the original owner against the purchaser at the sheriff's sale.

2. ———: ———: ———: IRREGULARITIES: COLLATERAL ATTACK. Where a court has jurisdiction of the subject-matter by virtue of the laws of the State, and it acquires jurisdiction over the person of defendant by due process of law, its judgments can not be attacked in a collateral proceeding for a mere irregularity. Errors of assessment in a tax suit, and a failure to enter the judgment in the precise method pointed out by the statute, do not render the judgment void, but are mere irregularities which can not be attacked in a collateral proceeding.

3. ———: NON-RESIDENTS: AFFIDAVIT. If the petition makes an averment that the defendant is a non-resident, it is not necessary that there be an affidavit stating that fact, before the order of publication can issue.

4. ———: ———: ———: ORDER OF PUBLICATION. Upon the filing of a petition alleging the defendant to be a non-resident the clerk is authorized, without any affidavit, to issue an order for notice by publication to such defendant, whether the suit be one for back taxes or other kind.

5. ———: ———: ———: ———: FALSE RECITAL. A false recital in the order of publication that an affidavit has been filed charging the defendant to be a non-resident does not affect the validity of the order or the judgment rendered in pursuance thereof, if the petition averred the defendant to be a non-resident.

6. ———: TWO JUDGMENTS: EXECUTION AND SALE UNDER LAST. A court can not render two final judgments in the same cause. If it has rendered one final judgment it can not at the next term change it into an interlocutory judgment by styling it such. And if there has been a final judgment at one term the sale and execution under another judgment rendered at the next term carry no title, for such last judgment was void. And in this case it is held that

a judgment rendered at the return term in a tax suit begun by publication against a non-resident, was a final judgment, and that another judgment rendered at the next term in which the first was spoken of as "an interlocutory judgment," was void, and being void the sheriff's sale and execution under such judgment carried no title.

Appeal from Ozark Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*Larz A. Whitcomb, Y. E. McClendon* and *Guy T. Harrison* for appellants.

(1) The tax deed, through which respondent claims title to the south half and west half of the northwest quarter of section 14, township 24, range 13, is void, because: first, it is based upon an assessment which was void for the reason that it violated the provisions of the statute which provided that "each tract of land shall be valued and assessed separately," and, second, the deed attempts to convey as one tract two separate tracts owned by different persons. Allan v. Buckley, 94 Mo. 158; Keene v. Barnes, 29 Mo. 377; Howard v. Heck, 28 Mo. 456; Cooley on Taxation, 494; Black on Tax Titles, p. 222; Black on Tax Titles, sec. 102; Black on Tax Titles, p. 106, 107. (2) The recital made in the tax deed of the notice of sale is merely an expression of opinion made by the officer, is not a compliance with the law, and, therefore, the tax deed is void on its face. Moore v. Harris, 91 Mo. 616; Burden v. Taylor, 124 Mo. 12; Yankee v. Thompson, 51 Mo. 234; Sperlock v. Allen, 49 Mo. 178; Howard v. Heck, 88 Mo. 456; Spurlock v. Dougherty, 81 Mo. 171; Lagrone v. Rains, 48 Mo. 536; Abbot v. Doling, 49 Mo. 302; Large v. Fisher, 49 Mo. 307; Smith v. Fauck, 57 Mo. 239; Hubbard v. Gilpin, 57 Mo. 441; State v. Mantz, 62 Mo. 258; Western v. Flanagan, 120 Mo. 61; Cook v.

Farrah, 105 Mo. 492; Tanner v. Stine, 18 Mo. 580. (3) The tax deed is void because the judgment upon which it is based is void, and, therefore, the deed has no ground to stand upon. Durham v. Darley, 34 Mo. 447; Murray v. Yates, 73 Mo. 13; Black on Judgments, secs. 24 and 304. (4) The notice citing the defendant into court was void, and, therefore, no notice at all, and all subsequent proceedings were void. Therefore, the tax deed based upon such proceedings is void. Black on Judgments, secs. 332 and 240; Harness v. Cravens, 28 S. W. 971; Turner v. Gregory, 151 Mo. 100.

*A. H. Livingston* for respondent.

(1) Appellant's sheriff's deed is in all things regular and valid on its face, and conveyed to respondent the title of John Whitcomb to the lands in question, and is especially invulnerable to collateral attack. (2) Under our revenue law as it has existed since 1877, the circuit courts have the same jurisdiction, in actions to collect back taxes, as they have in any other cases, and their judgments have the same effect and impart the same verity. In no case can their judgments be attacked in collateral proceedings for any irregularities. Want of jurisdiction only will invalidate such judgments. Weltshear v. Kelley, 69 Mo. 343; Brown v. Walker, 85 Mo. 262; Allen v. McCabe, 93 Mo. 138; Jones v. Driskill, 94 Mo. 190; Gibbs v. Souther, 116 Mo. 204. (3) There is no force in the points raised by appellant's counsel against respondent's deed because of the assessment. If there could be anything in the proposition it would be a matter of defense and nothing more. Brown v. Walker, 85 Mo. 262; State v. Hunter, 98 Mo. 386; Boyd v. Ellis, 107 Mo. 394; Jones v. Dresken, 94 Mo. 190; Cruzen v. Stephens, 123 Mo. 337. (4) The recitals in the deed are prima facie evidence of everything therein recited. R. S. 1899, sec. 9305.

FOX, J.—This suit was instituted in Ozark county, Missouri, on December 20, 1897. The nature of the action was to have the court ascertain and declare the title to the lands in dispute. That we may fully understand the issues in this cause, we have inserted the petition and answer.

The petition, omitting caption, is: "Plaintiffs state that they are the owners in fee simple of the following described real estate, situate in Ozark county, Missouri, to-wit, all of section fourteen and the northeast quarter and the east half of northwest quarter of section twenty-four, township twenty-four north, range thirteen west; that defendant claims title to said above-described real estate through a tax deed executed by M. P. Tate, sheriff of Ozark county, Missouri, on October 19, 1882; that said deed was executed by M. P. Tate, sheriff aforesaid, by virtue of a sale made under an execution issued from the circuit clerk's office of Ozark county, Missouri, on a transcript judgment from a justice of the peace and a judgment of the circuit court; that said judgments were wholly void and passed no title. Wherefore, the plaintiffs pray the court to ascertain and determine the estate, title and interest of plaintiffs and defendant respectively in said real estate above described and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real estate."

The answer, omitting caption, is: "Defendant for answer says that he denies each and every allegation therein contained, and not herein admitted. Defendant says he is the absolute owner in fee of all the land described in plaintiffs' petition and prays judgment for the same."

When the cause was called for trial, respondent by his attorney admitted that respondent had no right or title to the northeast quarter and east half of the northwest quarter of section 14, and the northeast quarter and east half of the northwest quarter of section 24,

township 24, range 13, the same being part of said lands, and that appellants were entitled to judgment for the recovery of the same.

During the progress of the trial, the following agreement as to this cause was made:

"It is agreed by and between the attorneys for plaintiffs and defendant that the common source of title is John Whitcomb, by deed to him dated August 20, 1870, by James Watson, patentee, to the south half and the west half of the northwest quarter of section 14, township 24, range 13, and that appellants are entitled to recovery unless respondent has title by reason of the sheriff's deed."

Appellants introduced in evidence their claim of title from Whitcomb to the plaintiffs in this action.

Defendant offered in evidence a sheriff's deed based on a judgment rendered by the circuit court of Ozark county, on October 28, 1878, conveying the land in dispute to one J. S. Plattenburg; also deed from Plattenburg to the defendant in this suit.

Plaintiffs then offered in evidence the petition in a suit for back taxes, filed in the circuit court of Ozark county to the April term, 1878, wherein the State of Missouri, at the relation and to the use of R. Q. Gilliland, was plaintiff, and John Whitcomb, defendant, to enforce the State's lien for taxes on the lands involved in this controversy.

Order of publication issued upon the filing of said petition to recover the back taxes, and plaintiffs offered in evidence such publication, which is as follows:

"ORDER OF PUBLICATION.

"The State of Missouri, at the relation and to the use of R. I. Gilliland, Collector of Ozark county, v. John Whitcomb.

"Now comes the plaintiff herein before the undersigned clerk of the circuit court of Ozark county, in

vacation, and files his petition and affidavit, stating, among other things, that the defendant is a non-resident of this State; whereupon it is ordered by the clerk that said defendant be notified by publication that plaintiff has commenced a suit against him in this court, the object and nature of which is to enforce the lien of the State of Missouri, for back taxes for the years 1865, '66, '67, '68, '69, '70, '71, '72, '73, '74, '75, and '76, amounting to the sum of $248.02, on the following described real estate, situated in the county of Ozark, to-wit, section 14, township 24, range 13, and that unless the said defendant be and appear at the next term of this court, to be held on the third Monday in April next, at the courthouse in the town of Gainesville, county of Ozark, State of Missouri, and on or before the third day thereof plead, answer or demur to the petition in said cause, the same will be taken as confessed and judgment rendered accordingly.

"And it is further ordered that a copy hereof be published, according to law, in the Ozark County News, a newspaper published in the county and State aforesaid.

"Attest:   JOHN W. HARLIN, clerk."

"PROOF OF PUBLICATION.

"I, W. A. Love, editor of the Ozark County News, a newspaper published in the county of Ozark, State of Missouri, certify that the order of publication, a copy of which is hereto annexed, was published in the Ozark County News for four successive weeks, the first insertion being on the 19th day of February, 1878, in numbers as follows: 19, 20, 21, 22.

"W. A. LOVE.

"Subscribed and sworn to before me this 18th day of April, 1878.

"(Seal).        JOHN W. HARLIN, circuit clerk.

"Filed April 18, 1878.      JOHN W. HARLIN, clerk."

Appellants introduced in evidence the judgment of circuit court rendered on the 5th day of the April term of court for the year 1878, the same being April 19, 1878, which is as follows:

"State of Missouri at the relation and to the use of R. Q. Gilliland, Collector, Plaintiff, vs. John Whitcomb, Defendant, suit on delinquent lands. ·

"Now at this day, this cause being called for trial, the plaintiff appears, by attorneys, but the defendant comes not, but makes default, and it appearing that this suit was brought to the court, by the above-named collector in and for Ozark county, Missouri, for the purpose of enforcing the lien of the State of Missouri, under the act of the General Assembly, approved April 12, 1877, upon the following described real estate, to-wit, section 14, township 24, range 13 west, for the taxes, interest and costs due thereon for the years 1865, '66, '67, '68, '69, '70, '71, '72, '73, '74, '75 and '76, and for a decree of this court to sell said real estate or so much thereof as shall be sufficient to pay and satisfy said taxes, interests and costs, the sum of two hundred and eighty-seven dollars and eleven cents, which said sum is ascertained by a taxbill filed here in court by said collector, and by him duly certified as the law directs, and the court finds that said interest, taxes and cost had been duly assessed and charged against said real estate, at the several times aforesaid by the proper officers, agents of said State of Missouri, under the then existing laws of said State, and that the defendant had wholly failed and neglected to pay the same or any part thereof, although often requested to do so by plaintiff's agents, and that defendant had been notified of the commencement of this action by publication in the Ozark County News, a weekly newspaper printed and published in Ozark county, Missouri, for four weeks successively, the last insertion being at least four weeks before the commencement of this term of this

court, and that the aforesaid sum of taxes, interest and cost is still due and unpaid. It is, therefore, considered and decreed by the court that the lien of the State of Missouri be enforced upon the above-described real estate, and that the same, or so much thereof as shall be sufficient to pay and satisfy said taxes, interest and costs, be sold according to law, for that purpose, and that plaintiff have and recover of and from the defendant her costs and charges in this behalf laid out and expended, and it is ordered by the court that a special execution issue against said lands.''

Appellants also introduced judgment of the Ozark Circuit Court, rendered on October 28, in a suit to enforce the State's lien for taxes against said section 14, in which said State of Missouri, at the relation and to the use of R. Q. Gilliland, was plaintiff, and John Whitcomb was defendant, which judgment is as follows:

''State of Missouri, at the relation and to the use of R. Q. Gilliland, Collector, vs. John Whitcomb, suit on delinquent lands.

''Now, at this day, this cause being called for trial, the plaintiff appears by his attorney, but the defendant comes not, but makes default, and it appearing to the court that this suit was brought by the above-named collector in and for Ozark county, Missouri, under act of the General Assembly of the State of Missouri, approved April 12, 1877, for the purpose of enforcing the lien of the State and county aforesaid, upon the following described lands, to-wit, all of section 14, of township 24, range 13, for the taxes, interest and cost due thereon for the years 1865, '66, '67, '68, '69, '70, '71, '72, '73, '74, '75, '76, and for the purpose of obtaining a decree of this court for the sale of said land, or so much thereof as shall be sufficient to pay and satisfy said taxes, interest and cost, and it appearing to the satisfaction of the court that at the last term of this court an interlocutory judgment was rendered against the defendant, and it appearing to the court

that the whole of said taxes, interest and costs are still due and unpaid the plaintiff, and that the same had been assessed and duly charged against said land at the several times, as before stated, by the proper officers, agents of the State and county aforesaid, and that the defendant had wholly neglected to pay the same or any part thereof, although often required to do so by the different collectors of said State and county, and the court further finds that said taxes, interest and costs charged against said land, amount to the sum of two hundred and ninety-three dollars and fifty-three cents, taxes and interest, and the sum of thirty-five dollars and twelve cents for his costs in this behalf laid out and expended. It is, therefore, considered and ordered by the court that the plaintiff have and recover of and from the defendant the amount of taxes and interest, together with his cost of this suit, and that the above-described land, or so much thereof as shall be sufficient to satisfy said taxes, interests and costs due thereon, be sold according to law, for which a special execution may issue against said land."

Upon this last-mentioned judgment, the special execution was issued, the land levied upon by virtue of it and sold, and in pursuance of such sale the deed in dispute (which is as follows) was executed.

"To all to whom these presents shall come: I, Robert P. Ellison, sheriff of the county of Ozark, State of Missouri, send greeting: Whereas, on the 28th day of October, A. D. 1878, judgment was rendered in the circuit court, in the county of Ozark, State of Missouri, in favor of the State of Missouri, at the relation and to the use of Robert Q. Gilliland, collector of the revenue of Ozark county, in the State of Missouri, and against John Whitcomb, for the sum of $293.53 for certain delinquent state, county and special taxes and interest hereinafter set forth, assessed and found by said court to be due and unpaid upon the following described real estate, viz.:

Warren v. Manwarring.

| Tract No. | Parts of Sections, Lot or Block, Addition or Town. | Sect'n. | Twp. | Range. |
|-----------|---------------------------------------------------|---------|------|--------|
| 1 | All of. | 14 | 24 | 13 |

"And that the taxes and interest found due upon said real estate and the years for which the same were assessed are upon each of the above-described tracts, as follows, viz.:

YEARS FOR WHICH TAXES WERE FOUND DUE.

Tract No. 1.                                                                    Total.
    1865, $11.36; 1866, $17.04; 1867, $13.49.........$41.89
    1868, $ 9.47; 1869, $17.04; 1870, $42.28.......... 68.79
    1871, $30.18; 1872, $28.03; 1873, $25.75.......... 83.96
    1874, $26.50; 1875, $40.22; 1876, $3217.......... 98.89    $293.53

"And also certain costs which have been taxed at the sum of $35.12, which said several sums of taxes, interests and costs, were declared by said court to be a lien in favor of the State of Missouri upon the above-described tracts of real estate.

"And, whereas, it was decreed by said court that the lien of the State of Missouri upon said real estate for taxes, interests and costs be enforced, and that said real estate, or so much thereof as may be necessary to satisfy such judgment, interests and cost, be sold according to law; upon which judgment a special execution and order of sale was issued from the clerk's office of said court, in favor of the State of Missouri, to the use of said collector and against the said John Whitcomb, dated the 28th day of February, A. D. 1879, and directed to the sheriff of the county of Ozark, and directing said sheriff to sell said real estate to satisfy such judgment, interest and costs, and the same was to me delivered on the 4th day of March, A. D. 1879, by virtue of which said execution, I, the said sheriff, did, on the 4th day of March, A. D. 1879, levy upon and seize the above-described real estate, situated in my said county; and having, previously to the day of the sale hereinafter mentioned, given at least twenty days' notice of the time and place of the sale, and of the real

estate to be sold, and where situated, as the law directs, by advertisement in the Weekly Ozark County News, a newspaper published in my said county, by virtue of which said execution and notice, I did, on the 22nd day of April, A. D. 1879, between the hours of nine in the forenoon and five in the afternoon of that day, agreeably to said notice, at the courthouse door, in my said county of Ozark, and during the session of the circuit court, at the April term thereof, A. D. 1879, expose to sale at public auction, for ready money, the above-described real estate, and J. S. Plattenburg being the highest bidder for the following described real estate, viz.:   Northeast quarter of northeast quarter for the sum of one dollar, and the southeast quarter of northeast quarter, for the sum of one dollar; the northwest quarter of northeast quarter, for the sum of one dollar; the southwest quarter of northeast quarter, for the sum of one dollar; the northeast quarter of southeast quarter, for the sum of one dollar; the southeast quarter of southeast quarter, for the sum of one dollar; the northwest quarter of southeast quarter, for the sum of one dollar; the southwest quarter of southeast quarter, for the sum of one dollar; the northeast quarter of northwest quarter, for the sum of one dollar; the southeast quarter of southwest quarter, for the sum of one dollar; the northwest quarter of northwest quarter, for the sum of one dollar; the southwest quarter of northwest quarter, for the sum of one dollar; the northeast quarter of southwest quarter, for the sum of one dollar; the southeast quarter of southwest quarter, for the sum of one dollar; the northwest quarter of southwest quarter, for the sum of one dollar; the southwest quarter of southwest quarter, for the sum of one dollar; all in section fourteen, township twenty-four, range thirteen west, lying and being situate in the county of Ozark, State of Missouri, the said last above-described tracts were stricken off and sold to the said J. S. Plattenburg for the sum bid therefor by him, as above set forth.

Now, therefore, in consideration of the premises and of the sum of sixteen dollars to me, the said sheriff, in hand paid me by the said John S. Plattenburg, the receipt whereof I do hereby acknowledge, and by virtue of the authority in me vested by law, I, Robert P. Ellison, sheriff, as aforesaid, do hereby assign, transfer and convey unto the said J. S. Plattenburg all the above-described real estate so stricken off and sold to him that I might sell as sheriff, as aforesaid, by virtue of the aforesaid judgment, execution and notice.

"To have and to hold, the right, title, interest and estate hereby conveyed unto the said J. S. Plattenburg, heirs and assigns, forever, with all the rights and appurtenances thereto belonging.

"In witness whereof, I, Robert P. Ellison, sheriff of the county of Ozark and State of Missouri, have hereto set my hand and affixed my seal this 25th day of April, A. D. 1879.

"ROBERT P. ELLISON."

This deed was duly acknowledged in open court and properly filed for record and recorded in the recorder's office of Ozark county. The record discloses that appellants, at the time said deed was offered in evidence, objected to its introduction, and excepted to the action of the court in overruling the objection.

Upon a submission of this cause to the court, it ascertained and declared the title, as to the land to which respondents entered a disclaimer, to be in appellants; as to the remainder of the land involved in this suit, it declared the title vested in the respondent, as is fully indicated by the decree rendered in this cause. To the action of the court in rendering such decree appellants objected and duly excepted at the time. Appellants' motion for new trial being by the court overruled, they in proper form have prosecuted their appeal to this court.

It is very earnestly urged by appellants' counsel, that the judgment in the tax proceeding was void, be-

cause based upon an erroneous assessment. It is also contended that the order of publication was improvidently granted; in fact, it is contended that it was void because the affidavit was not, in fact, made as recited by the clerk in the order of publication.    Appellants also insist that the judgment, upon its face, does not conform to the requirements of the statute.    The last contention and the one that is most vital, is that the judgment of October 28, 1878, upon which the execution issued and which forms the basis of the tax deed, is void.

The judgment in this case, if otherwise valid, is not rendered void by reason of the erroneous assessment complained of by the appellant.

In the case of Gibbs v. Southern, 116 Mo. 204, the court, through GANTT, J., says: ''It was assumed that the circuit court derives its jurisdiction to render a judgment from the existence of a valid assessment. This is most clearly not the law of this State.    The court derived its jurisdiction to hear and determine the cause in which the State to the use of the collector sued Eli Bower for the taxes therein claimed, from the Constitution and laws of this State.    It was a court of general jurisdiction, proceeding according to the course of the common law.    Its jurisdiction once obtained, as it was in that cause, upon a petition stating a cause of action, after due notification of the defendant by an order of publication regularly ordered and published, can not be questioned in a collateral suit, by the proof that some of its findings were erroneous.    Its judgments are no less conclusive in tax suits than in any other causes over which it has jurisdiction by virtue of the Constitution and laws of the State.    [Jones v. Driskill, 94 Mo. 190; Milner v. Shipley, 94 Mo. 106; Allen v. McCabe, 93 Mo. 138; 1 Black on Judgments, sec. 247.]    The court committed no error in refusing to admit the assessment books to show the lands were not assessed.    The proof of that fact, if true, would not

Vol 173 mo—3

have invalidated the judgment on which the tax deed was bottomed.''

This erroneous assessment at most was an irregularity, of which the appellant could not avail himself in a collateral proceeding. In the case of Allen v. McCabe, 93 Mo. 138, the court very clearly announces the doctrine that, ''the same presumptions are to be indulged in favor of its judgments and the proceedings under it, in tax cases, as would be indulged in favor of any judgment of a court of general jurisdiction in an action between individuals.'' To the same effect is the case of Wellshear v. Kelley, 69 Mo. 343.

The doctrine as contended for by appellants and which is supported by certain adjudications, might be applicable in cases where the sale of the land for taxes was authorized to be made in a summary manner without the judgment of any court, or where the sales were in pursuance of judgments rendered by courts exercising special or limited jurisdiction; but not so under the law in force governing the tax proceedings in this case, where the judgments are rendered by a court of general jurisdiction.

Where the court has jurisdiction of the subject-matter and acquires jurisdiction of the person by due process of law, its judgments are entitled to all favorable presumptions and can not be attacked in a collateral proceeding for a mere irregularity.

As to errors complained of, that the judgment does not conform to the requirements of the statute, we will say that what has been said upon the point as to errors in the assessment, is equally as applicable to this contention. The failure of the court to enter the judgment in the precise method pointed out by the statute, was at most an irregularity, but did not render the judgment void, and it is unavailing to the appellant in this action.

The next contention to which our attention is very earnestly directed by learned counsel for appellants is

the charge that the order of publication was void, because the affidavit was not, in fact, made. We have examined the petition filed in the back-tax suit, from which the sale in dispute resulted, and find that it is alleged in the petition, independent of the affidavit, that "the defendant is a non-resident of the State, so that the ordinary process of law can not be had upon him; therefore, prays the court, in vacation, to make an order of publication notifying the defendant of the commencement of this suit."

Section 6, Laws 1877, page 386, under which the proceeding was instituted, provides that "in case of suits against non-residents, on whom service can not be had by ordinary summons, the proceedings shall be the same as now provided by law in civil actions affecting real or personal property," and hence we are led to the provisions of the general law, in respect to orders of publication, to see the requisite steps to be taken in order to procure an order of publication.

Section 575, Revised Statutes 1899, which is the same as the statute on this subject in force in 1877, provides, that "if the plaintiff shall allege in his petition, or at the time of filing the same, or at any time thereafter shall file an affidavit, stating that part or all of the defendants are non-residents . . . so that the ordinary process of law can not be served upon them, the court in which said suit is brought, or in vacation the clerk thereof," shall make the order of publication.

It will be readily observed, that if the petition makes the proper averments as to non-residence, no affidavit is required. In fact, the statute simply points out two methods of securing the order desired. This order can be issued by the court or the clerk.

The order of publication challenged in this case was issued by the clerk. The clerk was authorized to make this order upon the allegations in the petition, without any affidavit. It is true he recites in the order, the making of the affidavit; this recital, even if not

true, would not make the order void, for he had the authority, under the plain terms of the petition, to issue the order. There is no merit in this contention, and at most it stands on the same footing of the other contentions discussed, a mere irregularity. That can not be invoked by the defendant in this proceeding.

This brings us to the last question involved in this case.

Was the sale in the tax proceeding, which resulted in the execution of the tax deed by the sheriff, based upon a void judgment? The answer to this question settles this controversy.

Section 10, Laws 1877, page 387, in force at the time this tax suit was brought, provides that "all suits instituted under the provisions of this act shall be tried at the return term of the writ, unless continued for good cause shown." It will not be disputed that this suit which resulted in the sale of the land in suit was, under the provisions of the statute, triable at the April term, 1878, to which that suit had been brought. At the April term the judgment as heretofore indicated was rendered. This judgment, in our opinion, was a final judgment. The statute authorized its trial, the court had jurisdiction of the subject-matter and of the person of the defendant, and each and every fact necessary to be found is recited in that judgment. The lien of the State is declared, the amount is ascertained; it is ordered that the land or so much thereof as shall be sufficient to satisfy the taxes, interest and cost, be sold and that special execution issue against said land.

At the October term, 1878, a judgment similar in all respects was rendered, in the same proceeding. In fact, it is substantially the same in form, except it recites the entering of an interlocutory judgment at the April term. The execution was issued upon this last-mentioned judgment, rendered at the October term, 1878, and the sale and deed followed as a result of that judgment and execution.

It is elementary that there can not be two final judgments in the same action, with but one defendant. This court, in the case of Wellshear v. Kelley, supra, said in respect to the time when these tax suits were to be tried, "The court did not err in rendering a judgment at the first term. The statute expressly provides that the first shall be the trial term."

Black, in his work on Judgments (2 Ed.), volume 1, section 24, says: "There can not be two final judgments in the same action." And again in section 304, volume 1: "It has been held that the entry of a second judgment, in the same action, is not a vacation of the first judgment, if there is nothing further to show that such former judgment was regularly cancelled or set aside. 'When a judgment is once entered of record, it must stand as the judgment, unless it is vacated, modified or disposed of by some means provided by law; entering additional judgment entries is not one of them.' "

The judgment at the April term, 1878, was complete in itself; there was no further action of the court necessary to give it force and power; it was the term at which the final judgment should be entered and the mere fact that the judgment at the October term, 1878, refers to it as an interlocutory judgment, does not make it so. Judgments are determined as to their finality by their force and effect, and not by a mere name.

The entire powers of the court in that tax proceeding was exhausted at the April term, 1878. Having entered a full and complete judgment for the recovery of the back taxes sued for, and having ordered the issuance of process to enforce such recovery, the defendant, in contemplation of law, was not before the court at its October term, 1878, and the court having exhausted its full power in that proceeding at the April term, its judgment rendered at the October term was void. It had neither jurisdiction of the subject-matter nor of the person of the defendant.

In the case of Danforth v. Lowe, 53 Mo. 217, it was very appropriately said that, "After the term had elapsed, at which final judgment was taken, the court possessed no further control or jurisdiction over the case. It then had no power to reinstate the cause on the docket, or to take any further proceedings."

In the case of Coe v. Ritter, 86 Mo. 277, there were two judgments entered; one was an original judgment, and following that there was a judgment "nunc pro tunc," execution was attempted to be issued on the original judgment, but it conformed to the nunc pro tunc judgment, and sale was made upon that execution. The court said: "And the sale, under the execution issued on the original judgment, was invalid, because it did not conform to such judgment, but to the one entered now for then in 1878. It follows, therefore, that defendant's title rests upon an execution with no judgment to support it."

In Burnham v. Hitt, 143 Mo. 421, the court, speaking through GANTT, J., said, in respect to judicial sales: "A partition sale is a judicial sale and it is an indispensable prerequisite to the validity of such a sale that it should be based upon a valid judgment, decree or order of sale."

The judgment of the October term, 1878, was void, and it being the basis of the execution, sale and deed, it follows that the tax deed introduced in evidence passed no title to the lands embraced in it, to the respondent.

This judgment being the very foundation upon which the sale and deed must rest, and its absolute invalidity appearing from an inspection of the record in the tax proceeding, it was an error for the court to consider the deed, in reaching its conclusion in this cause.

With these views, as herein expressed, we have reached the conclusion that the decree of the court was erroneous, and its judgment will be reversed and remanded for a new trial, as indicated in this opinion.

All concur.