LAMBIN E. IRWIN v. EDMOND T. BURGAN, H. V. BURGAN, J. A. DOCK ET UX and PATRICK CARR, Appellants.—28 S. W. (2d) 1017.

Division One, June 3, 1930.

310

*Ellison, Dabbs & Flora* for appellants.

*Grover Childers* and *J. Roy Smith* for respondent.

ELLISON, C.—This case turns on alleged procedural errors. To show what they were we must state the facts at some length.

On May 18, 1925, the respondent filed a bill in equity in the Circuit Court of Jackson County against the appellants Burgan: (a) for the rescission of a contract whereunder he had purchased a theatre from them; (b) to recover back $5,000 cash consideration paid; and (c) to cancel two promissory notes of $2500 each, made to the appellant H. V. Burgan, due respectively in one and two years, these also being a part of the purchase price. The petition alleged the sale was induced by fraudulent misrepresentations as to the earnings of the theatre, and charged that said appellants falsely stated no competing theatre was in contemplation, when they knew of an existing contract for the immediate construction of one. Along with the other relief sought, the bill prayed that the Burgans be enjoined from negotiating the two notes. The Burgans filed answer denying the allegations of fraud in the petition.

The cause was assigned to Division 3 of the court, where, on December 30, 1925, during the November term, it was tried, submitted and taken under advisement. On January 23, 1926, during the January term, the court rendered its decree finding the issues for the respondent, rescinding the sale, awarding a money judgment for $5187.50, cancelling the notes and requiring defendants to deliver them to the clerk within ten days for cancellation; and provided *"that in case of the non-delivery thereof within the time specified plaintiff have such further relief in relation to said notes as shall be just and equitable, and the court hereby retains jurisdiction of the cause for the purpose aforesaid."* (Italics ours.) By the express terms of the decree execution was awarded to the respondent for his debt and costs.

The Burgans duly filed a motion for a new trial within four days thereafter, but the motion was never ruled upon for reasons which will presently appear.

The notes were not surrendered, and the status of the case remained unchanged until February 13, 1926, when the parties appeared and the testimony of the Burgans was taken for the purpose of discovering the whereabouts and ownership of the notes. On

several occasions thereafter further hearings were had on these matters, and the respondent took the deposition of J. A. Dock, a brother-in-law of Mr. Burgan residing in the State of Washington, to whom the Burgans claimed to have indorsed and transferred the notes for value in November, 1925, shortly before the suit was tried. Dock's deposition showed the notes were in the hands of Patrick Carr, a practicing lawyer of Jackson County, for collection by him as attorney for Dock and his wife. The testimony is marked by some inconsistencies, contradictions and improbabilities which produce an impression that the claimed transfer of the notes by the Burgans, if made, was not in good faith for value without notice. After these hearings the court cited Mr. Carr to appear and produce the notes, but the citation was apparently ignored.

Following this, at the March term, on April 27, 1926, the respondent filed a "supplemental" petition as follows:

"Comes now the plaintiff and shows to the court that the notes in plaintiff's petition described and which plaintiff therein prays to have cancelled, are now in the possession of Patrick Carr of Jackson County, Missouri; that said. Patrick Carr claims to hold said notes as attorney and agent for J. A. Dock and Mrs. J. A. Dock, of Pierce County, Washington.

"Plaintiff further shows to the court that said J. A. Dock and Mrs. J. A. Dock, nor either of them, are bona-fide holders in due course for a valuable consideration; that they in fact have no interest in said notes, but hold them as the agent and representative of defendants Edmond T. Burgin and H. V. Burgin.

"Plaintiff further shows to the court that the court has heretofore found herein that said notes are subject to cancellation by Judge of said court.

"Plaintiff further shows to the court that defendants and each of them by fraud, are attempting to avoid the order of the court heretofore made and as may hereafter be made in respect to said notes; that they are about to remove same from the State of Missouri, and without jurisdiction of the above named court, with the intent and purpose of placing same in the hands of an innocent holder for value, thereby to render same collectible."

The prayer of this pleading asked that Mr. and Mrs. Dock and Patrick Carr be made defendants; and that the defendants be enjoined from removing the notes from the county and from transferring or negotiating them in any manner, or enforcing payment thereof; and that on final hearing the notes be cancelled. Appended to the petition was an affidavit that Mr. and Mrs. Dock "cannot be served in the State of Missouri as provided by law."

On the same day the court entered an order that the Docks and Carr be made parties defendant, that summons issue against them, and that they be temporarily restrained from removing the notes

from Jackson County. In May following, the new defendants were all served—the Docks in the State of Washington—with summons and a copy of the *supplemental* petition. At the return term Carr filed a general demurrer to the petition, and the Docks, appearing for that purpose only, a plea to the jurisdiction. These pleadings were never passed upon by the court.

At the September term, 1926, the plaintiff filed another affidavit of the non-residence of the Docks, upon which new process was issued and served on them in the State of Washington. Attached to this summons and return were copies of the *original* petition. To the caption thereof had been added by interlineation with pen and ink the names of J. A. Dock, Mrs. J. A. Dock and Patrick Carr as parties defendant, but the body of the pleading was unchanged. No averments were added concerning the new parties. There was no record authority for the amendment to the caption unless the aforesaid order entered in Division 3 directing the above mentioned parties to be made defendants, can be taken as such. The petition was not refiled.

Such was the status of the case when, on December 20, at the November term, 1926, the circuit court entered a second decree, in the absence of the defendants Dock and Carr. No one of these three appeared in person or by counsel, and the decree as to them was based on the evidence introduced before they had been made parties. As regards the appellants Burgan this new decree was in substance a rescript of the one first entered, though the latter was not set aside or stricken from the record. The second decree further cancelled the purported transfer of the notes to the Docks as fraudulent and collusive, enjoined the five appellants from negotiating, transferring or collecting them, and ordered the appellant Carr to produce them in court in three days for cancellation.

In due time the appellants Burgan on the one hand, and the defendants Dock and Carr, on the other, filed their respective motions for a new trial. The Burgans' motion complained that the original decree entered in January, 1926, was final and that their motion for a new trial addressed thereto had never been passed upon. The motion of the Docks and Mr. Carr assigned, among other grounds: (1) that the petition stated no cause of action against them; (2) that a general demurrer thereto was pending at the time of the decree; (3) that the cause of action was not such as to authorize constructive service, and the attempted amendment of the original petition was void and ineffectual. The three defendants last named also filed a motion in arrest of judgment specifying that the petition stated no cause of action and that on the face of the record no judgment could be entered against them. These motions being overruled, this appeal followed.

316

The view we take of the case makes it unnecessary to set out more fully the evidence on the merits of the controversy, except sketchily in the course of the opinion.

I. The appellants make the sweeping assignment here that the evidence was insufficient to show fraud in the sale of the theatre. The contract of sale was made on April 28, 1925, and closed two days later on May 1. The respondent's testimony is clear that the appellant Edmond T. Burgan represented to him in the negotiations for the sale and as an inducement thereto that no competing theatre was in contemplation so far as he knew; that there had been talk of a new show ever since he, Burgan, had been in business there, but nothing had ever come of it. And yet there is further clear and credible evidence that Burgan knew a contract for a competing theatre to be located only a block away had been signed six days before, on April 22, and that for that very reason he listed his own theatre with brokers for sale. There is other evidence to sustain the allegations of fraud, but we shall not extend the opinion by setting it out. This assignment is ruled against the appellants.

II. The next assignment questions the sufficiency of respondent's bill to state a cause of action against appellants Dock and Carr. The point is well taken. The original bill contained no allegations whatever connecting them with the suit. It is an elementary rule that a bill in equity must show not only the right and interest of the plaintiff in the subject-matter of the suit, but also that the defendants have some real or asserted connection therewith on account of which they are bound to answer to the plaintiff. [21 C. J. sec. 396, p. 385, sec. 404, p. 389.] The insertion of the names of Mr. and Mrs. Dock and Mr. Carr in the caption as defendants added nothing to the substance of the pleading. [21 C. J. sec. 393, p. 384.]

But respondent argues his supplemental petition adequately supported the decree against the Docks and Carr. We are unable to accept that view. The second petition was wholly lacking in averments sufficient to make out a case against the new defendants because it did not show the initial fraud of the Burgans which invalidated the notes; and the two pleadings could not be used to piece out each other. This was not true under the old chancery practice, where, speaking generally, a supplemental bill could be filed either before or after decree to bring into the case matters related to the main controversy arising after the commencement of the suit or which had not come to the plaintiff's knowledge until then. [21 C. J. secs. 658-662, pp. 540-544; 49 C. J. secs. 791-800, pp. 566-573; Story's Equity Pleading (10 Ed.) secs. 332-

337, pp. 318-324.] But, contrary to the weight of authority elsewhere, under our code a supplemental as well as an amended petition must set forth all matters necessary to the determination of the action so there will be but one entire pleading (Sec. 1283, R. S. 1919; Ward v. Davidson, 89 Mo. 445, 455, 1 S. W. 846, 848-9; Cohn v. Souders, 175 Mo. 455, 467, 75 S. W. 413, 416); and the provisions of the statute are so broad and positive as to admit of no exception even in the case of supplemental petitions filed after judgment.

We do not mean to say that if a plaintiff filed a supplemental bill after decree the new petition will altogether supersede the old one (as is true of amended petitions) and thereby destroyed the foundation on which the decree is based with the result that the whole case is thrown open for a new trial on the supplemental petition. But we do hold the statute must be construed as requiring every supplemental petition to set out all necessary elements of the whole cause of action relied on. In the instant case the respondent is put in the position of relying on his main bill as against part of the appellants and for part of the relief sought, and on his supplemental bill as to the rest. This obviously violates the mandate of Section 1283, and the omissions are so vital that they are not cured by the meliorative provisions of Sections 1276, 1513 and 1550, Revised Statutes 1919.

III. Another and more vital defect in the record, properly brought to this court's attention, is this. The proceedings culminating in the second decree were *coram non judice* and void as to all the parties because the first decree, rendered at a prior term, was a final judgment in the cause; and it had not been vacated.

It will be remembered the case in the beginning was an equity suit against the two Burgans to rescind the sale of a theatre, to recover back $5,000 cash consideration paid, and to cancel the two notes representing the balance of the purchase price. After a trial this controversy was decided by the first decree, which fully disposed of the cause on its merits as to all parties then in court and awarded execution. This was a final judgment. As is said in Corpus Juris, Vol. 21, p. 643, sec. 822:

"A decree is final when it fully decides and disposes of the whole merits of the cause, and leaves no further questions therein for the future judgment of the court, although ministerial or administrative action may be necessary in order to settle the details of the litigation or in the course of the execution of the decree, and although there are express orders or reservations in this regard. Otherwise expressed, a decree is final if it is ready for execution."

The decree being final the court was without jurisdiction to enter a second final decree in the same cause at a subsequent term, the first decree not having been vacated during the term at which it

was rendered. [21 C. J. sec. 874, p. 706; State ex rel. Potter v. Riley, 219 Mo. 667, 690, 118 S. W. 647, 654; Warren v. Manwarring, 173 Mo. 21, 37, 73 S. W. 447, 452.] The case last cited says, quoting from 1 Black on Judgments (2 Ed.) secs. 24, 304:

"There cannot be two final judgments in the same action . . . It has been held that the entry of a second judgment, in the same action, is not a vacation of the first judgment, if there is nothing further to show that such former judgment was regularly cancelled or set aside. 'When a judgment is once entered of record, it must stand as the judgment, unless it is vacated, modified or disposed of by some means provided by law; entering additional judgment entries is not one of them.' "

As already stated in the quotation from Corpus Juris, supra, the fact that the court expressly retained jurisdiction of the cause to award further equitable relief in case the defendants Burgan should fail to surrender the notes within ten days, did not make the first decree any the less final if it was so otherwise. [Schneider v. Patton, 175 Mo. 684, 727-30, 75 S. W. 155, 168; City of St. Louis v. Crow, 171 Mo. 272, 280, 71 S. W. 132, 134; Miller v. Connor, 177 Mo. App. 630, 636, 160 S. W. 582, 583; Ball v. Peper Cotton Press Co., 141 Mo. App. 26, 49, 121 S. W. 798, 805.]

In the Schneider case just cited the circuit court gave plaintiff judgment for a money demand and further required the defendant to surrender into court within five days a certain promissory note. The decree then provided if the defendant should fail to produce the note, a money judgment would be awarded to the plaintiff for the face value thereof. Thereupon the defendant filed a motion for a new trial. Some days later this motion was overruled, and, the defendant having failed to bring in the note, the court gave plaintiff judgment for the amount thereof. After the entry of this second judgment the defendant appealed without filing another motion for new trial. In the Supreme Court the plaintiff-respondent contended this omission invalidated the appeal on the ground that the second judgment, and not the first, was the final judgment in the case. This court held otherwise, saying:

"It is clear that if Patton had turned the note in question over to the clerk within five days from the date of the decree as therein provided, no one would gainsay the fact that the decree was final when entered upon the record of the court, with a limited time to Patton to comply with its terms, which did not in any way affect its finality, and, if this be so, it is none the less final because he failed to turn over the note as required by the decree."

Neither may it be contended the first decree was not final because the Burgans had filed a motion for a rehearing which was

still pending and undetermined when the second decree was entered. It is sometimes said a judgment is not final against a party so long as his motion for a new trial remains undisposed of. [Costello v. Kansas City, 209 Mo. App. 155, 161, 232 S. W. 165, 167.] This, however, is true only in a limited sense. The pendency of the motion will carry the judgment along from term to term for the purposes of the motion; and when it is sustained or overruled an appeal may be taken. But it is not the law that a final judgment is thereby made interlocutory so as to permit of a second adjudication on the merits of the old case without a trial anew (21 C. J. sec. 883, p. 720; Hurley v. Kennally, 186 Mo. 225, 228-229, 85 S. W. 357, 358); and by the same token the mere pendency of the motion will not authorize the court to reopen the cause at a subsequent term for the taking of further evidence and the entering of another decree based on both the old and new evidence.

A court of equity can enforce its decrees, and so the court might have done in this case within proper limits. Section 2341, Revised Statutes 1919, empowers all courts to issue all writs which may be necessary in the exercise of their respective jurisdictions, according to the principles and usages of law; and Section 1541 permits the issuance of a writ of possession to put the party entitled into possession of real or personal property the delivery of which has been adjudged, or the court may proceed by attachment or sequestration. [See also Secs. 1679-1684, R. S. 1919, covering executions.] A writ of assistance has long been available to courts of equity in the enforcement of decrees adjudging the right of possession or title to property (21 C. J. sec. 866, p. 694); and the writ will reach third parties who hold through or under the litigant divested, as privies, purchasers *pendente lite* and the like in such manner as to be bound by the previous final decree. But the writ will not issue against outside persons whose rights have not been determined by the decree, or who prima-facie have acquired a new and independent right. [5 C. J. sec. 6, pp. 1319, 1320.] Here the property involved was negotiable instruments of which Mr. and Mrs. Dock claimed to be the holders in due course. Clearly the circuit court could not reopen the case after the judgment term to try another suit involving the question as to whether these new parties had good title to the notes irrespective of the alleged fraud practiced on the respondent, which was the sole basis of the original action.

IV. Other errors are assigned complaining that the service of process on the appellants Dock was void, and that they and the

appellant Carr did not have their day in court, because the second decree was based wholly on evidence taken before they were made parties (if they were). But it is unnecessary to pass on these assignments since we have held the second decree was not binding on them for other reasons.

V. The final point to be determined is what order should be made by this court in disposing of the appeal. We have held the first decree was a final judgment. As against it the appellants Burgan filed a motion for a new trial which has not to this day been directly ruled on by the circuit court. Thereafter, without objection, they permitted themselves to be examined as witnesses in the subsequent proceedings culminating in the second decree. But there is nothing in the record indicating they acquiesced in the filing of respondent's supplemental bill, in the court's order, or in the issuance of process bringing in Mr. and Mrs. Dock and Mr. Carr as new parties defendant. When the second decree was rendered they (the Burgans) assailed it vigorously by a second motion for rehearing on the same ground urged now, viz., that the first decree was final and that their first motion had not been passed on —but they refrained from setting up any assignments covered by their first motion.

In these circumstances we cannot say the Burgans abandoned their first motion for a new trial. Neither can we rule their appeal is premature and should be dismissed because their first motion (directed to the real final decree) has never been overruled. It was disregarded and indirectly overruled by the court in permitting the later proceedings and in entering the second decree purporting to cover the whole case. A compliance with the strict, technical equities in favor of the Burgans would seem to call for the reversal and remanding of the cause with directions to reinstate the first decree and the Burgans' first motion for rehearing; but this will not do, for it would leave the way open to a second appeal by them on the merits of the same record, whereas both the circuit court and this court have already passed on those questions —this court at the invitation of the Burgans as appellants.

On this unique record the order will be that the cause is reversed and remanded with directions to the circuit court to enter its decree in favor of respondent conforming hereto and substantially as set out in said original decree of January 23, 1916, but with interest computed on said money judgment for $5,000 to the date of entry; and further awarding the plaintiff-respondent his costs as against the defendants Burgan, and the defendants J. A. Dock, Mrs. J. A. Dock and Patrick Carr their costs as against the plaintiff;

and that the several parties have execution therefor. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is a-dopted as the opinion of the court. All of the judges concur.