ABIGAIL BIGELOW Adm'rx. of ABIJAH BIGELOW *vs.* THE CONGREGATIONAL SOCIETY of Middletown.

*(In Chancery.)*

The aid of a court of equity may be had in certain cases to enable a creditor to collect a judgment of a court of law.

An incorporated society must appropriate their property for the payment of their debts, and if they neglect to do so, and permit the property to be wasted, the individual members may be liable.

A meeting house is not liable to be taken in execution for the debts of such society.  —

IT appeared from the bill and answers in this case, that the congregational society of Middletown was originally organized, under the acts of the legislature of this state for the support of the gospel, and that their organization had been several times revised and altered; that in the year 1805, a fund was raised by the society for the support of a minister, upon the understanding that the intestate should be settled over the society within a limited time; that he was accordingly so settled, and continued their minister until his death, which occurred in June 1832, and that, at his decease, the society were indebted to him in a large balance, which was adjusted by the commissioners upon his estate, the society having presented to such commissioners a claim against him, as their treasurer, and that, upon an appeal taken from the judgment of the commissioners to this court, final judgment was rendered by the supreme court in favor of the estate for $1333,94, damages, and $147,60 costs; that the available funds of the society, consisting principally of notes for money loaned, amounted, at the time of the intestate's death, to about $1500. These notes were taken from the oratrix after the death of the intestate, by members of the society. On the 1st day of January 1834, a new association was formed under a different name, and the Rev. G. C. Sampson was employed as a minister, and paid out of the fund in question, and the fund became thus reduced to a very small sum.

The society was possessed of this balance, together with real estate, consisting of a meeting house.

The object of the bill was to obtain a discovery of the persons composing said society, the appointment of a receiver of the funds and property of the society, and to com-

Rutland,
January,
1839.
   pel, by a decree of this court, the payment of the judgment aforesaid.

Admr'x. of
Bigelow
v.
Cong. Society
of
Middletown.
   *P. Smith* and *E. L. Ormsbee*, for Oratrix.

By the act of November 10, 1814, Comp'd. Stat. p. 602, any number of persons, voluntarily associating for the support of the gospel, are constituted a body corporate and politic, for the purposes contemplated in the 1st sec. of the act of October 1797, or to carry into effect any agreement by them made for the settlement or support of a minister. They may sue and be sued ; may appoint their own officers, and have all the powers incident and necessary to corporations. *See* Comp. Stat. p. 600, 601, 602.

The purposes, for which these societies are formed, are highly beneficial, and it seems to have always been the aim of the legislature to give them all the necessary powers to carry into effect these beneficial purposes. At the same time the legislature has restricted their powers, with great caution, to the few objects, for the advancement of which corporate powers would be either necessary or beneficial.

It would be idle to give the power to sue and be sued, without providing any means to enforce the satisfaction of a judgment when obtained.

On a fair construction of the statute, a remedy against the individuals is given by express enactment. Comp. Laws, p. 157, Sec. 5.

A parish is an ecclesiastical society not bounded by territorial limits. A society is the union of a number of rational beings either for a temporary or permanent purpose. 3d. Mass. R. 276. 6 Mass. R. 547.

Whether the members of the society are liable by express enactment of statute, or by implication of law, they must be considered as standing, both in their relation to each other and to creditors, as individuals forming a copartnership, for certain limited purposes. Those purposes are marked out by law, and certain general powers are given for the more easy and convenient execution of such purposes.

That such general powers are given for the more convenient execution of such purposes never can be construed as exempting the individuals composing such societies from their liabilities.

There is a clear distinction between corporations of this

kind and mere pecuniary corporations. - The very object of the formation of the latter is to restrict the liability of the individuals composing them to the amount of their stock paid in.

Rutland,
January,
1839.

Admr'x. of
Bigelow
v.
Cong. Society
of
Middletown.

These are *quasi* corporations. The members of such are liable individually for their debts. 2 Kent's Com. 221. Angell & Ames on Corporations, 17, 23, 374.

. It was necessary to resort to a court of chancery in the present case to obtain a discovery of the members, of the situation and amount of the personal property, and in order to obtain a decree for the sale of the real estate, if necessary.

The court of chancery, once having jurisdiction, will retain the suit, and, if in their power, do full justice between the parties.

If necessary, therefore, either from the want of corporate property to pay the debts, or from the want of the power necessary to enforce satisfaction at law against the society, the court, having the individual members of the society before them, will decree the debt to be paid under such a penalty and to be enforced in such a manner, as they shall judge expedient.

*J. Clark* and *C. Linsley*, for defendants.

1. Though the defendants, who appear, do not object to the appointment of a receiver, and the application of the funds to meet the claim of the oratrix, yet the power of the court to interfere may admit of serious question. Bridgman's Index, 560. 2. Kent's Commentaries, 252. -

2. It does not appear that the oratrix has not a remedy at law, and the suit having been brought there, the court of law has jurisdiction, and this court cannot interfere, at least, until every step has been taken at law, and as it does not appear that an execution has issued, it cannot be known but it might be effectual.

3. It appears from the bill that the original society is dissolved. Hence the individuals of the old corporation are not properly before the court, the bill being only served on the clerk of another society.

4. It appears that the society fund was the only and sole reliance on which the intestate consented to perform the services. If such was was the mutual understanding, there is no equity in calling on individuals or this society.

RUTLAND,
January,
1839.

Admr'x. of
Bigelow
v.
Cong. Society
of
Middletown.

5. It is believed that the power of a court of chancery over corporations is limited to those for charitable uses, and that the court will only interfere when fraud is alleged. 2 Johnson's Chancery Rep. 386, 389.

6. The prayer in the bill is that, if the corporate funds are insufficient, the society may be decreed to pay the balance. If the society is virtually dissolved by the consent of the members, it is clear that a decree cannot be had against it.

7. The remedy in this case was at law. Chancery will not interfere, when there is an adequate remedy at law. If the society is in existence, the remedy at law is perfect, and if not, no decree of a court of chancery can give it vitality. When there is a statute remedy pointed out by law it must be pursued. 5 Johnson's Chancery Rep. 377.

8. The rules applicable to corporations for manufacturing, which are a sort of partnership, are wholly inapplicable to societies, and against them there is no remedy but the statute remedy, unless fraud is shown.

The opinion of the court was delivered by
WILLIAMS, Chancellor. It is fully settled that a court of equity can aid a creditor to enforce a judgment of a court of law. When there is a legal claim established, by a judgment, and the courts of law are unable to afford an adequate relief, from a defect in their process or powers, a court of chancery may assist the creditor to reach the property of the debtor, which cannot be taken on an execution. Several cases of this kind are enumerated in the opinion delivered in the case of *Hadden* v. *Spader*, 5 Johns. Ch. R. 280, and 20 Johnson's R. 554.— There may be a difficulty in ascertaining what remedy should be afforded in the case of a corporation, and in applying the remedy so as not to do injustice to individual interests, but still, if individuals have not done all which they mght or could do to fulfil their legal and moral duties, the consequences are their own. In this case, it is ascertained by the judgment of the supreme court, that the defendants were indebted to the estate, of which the oratrix is administratrix, and they are under a legal and moral obligation to pay the debt, if they are able. They have had the means in their hands to satisfy a part, if not the whole, of the claim of the

oratrix. The ordinary process of a court of law is inade-
quate to enforce a satisfaction of the judgment. The indi-
viduals composing the society are not personally liable,unless
they have made themselves so by some act or default. An
execution against the society cannot be levied on the separate
property of the individual members. The statute,directing the
mode of proceeding with executions against corporations, ap-
plies to public and political corporations, who may vote and
levy a tax. This association has no such power. If the re-
al estate which they have, and which consists of a meeting
house, was liable to execution, the oratrix could levy thereon
and would not need the aid of a court of equity. But this
property is not liable for the debt. The several pew holders
have an individual interest in the meeting house. They may
or may not be members of the society, and although the fee
of the land may be in the society, yet it is subject to the
rights of the individual pew holders, as well as to any right
which the public may have acquired, to have it kept for the
purpose for which it was originally dedicated. It is not lia-
ble to be taken on execution issuing on the judgment of the
oratrix, and for the same reasons that it is not liable, a sale of
it should not be decreed.

As there does not appear to be any means, by which the
oratrix can obtain satisfaction by the ordinary process of law,
the inquiry is whether there is any property or funds, by
which this court can decree a satisfaction of the execution.

It appears that at an early day, and when Mr. Bigelow
was settled, a fund was raised to provide for his support.
This fund consisted of notes and obligations against different
individuals, and the moneys collected have been, from time to
time, loaned out. The manner in which the fund was ob-
tained is not particularly set forth. Probably it was designed
that the annual interest alone should be appropriated for the
support of their minister. It does not appear, however, that
it has been so considered, nor do we know that there was
any limitation as to what part of the money given should be
applied for this purpose,or that the contributors thereto annex-
ed any terms or conditions to their contributions. All the in-
dividual members,who have answered, consent to the appoint-

RUTLAND,
January,
1839.

Admr'x. of
Bigelow
v.
Cong. Society
of
Middletown.

ment of a receiver and the application of the fund to the extinguishment of the debt of the oratrix, as far as it will go. From the answer of one of the members of the society, it appears that this fund was diminished to a comparatively small sum. From this answer, as well as that of another of the members, it would seem there was to the amount of about fifteen hundred dollars, in good and collectable notes, at the death of Mr. Bigelow, and there appears to be no question made, but that this fund was designed and may be appropriated to pay the salary of Mr. Bigelow, while he lived, and the debt in favor of his personal representatives, arising from the arrears of that salary unpaid. It was the duty of the society, on the death of Mr. Bigelow, to appropriate this fund for that purpose, and what was the duty of the society was the duty of the individual members, and if they have suffered the fund to be wasted and lost, through carelessness, negligence, or misfeasance, it must be their loss. Instead of appropriating it in this way, it seems they have been engaged in a law suit, in contesting the claim of the oratrix and defending this bill. Although it may have been right and just that they should thus contest the claim, yet they must be subject to the same rules which apply to other suitors. If they fail, they must lose their own, and pay their adversaries' cost. They cannot appropriate this fund to that purpose until the debt of the oratrix is first paid. If the society formed in 1834 has had the benefit of any part of it, they must repay it, if it is wanted to pay the just debts and charges of the defendants.

We are of opinion that the oratrix has a just claim to have all the fund existing at the death of the intestate, or so much thereof as is necessary for the purpose, appropriated to the payment of the demand or judgment in her favor, as administratrix. And the individual members of the society, at that time, who might or could control the same, are responsible that it should be so applied. The decree of the court will therefore be, that a receiver be appointed to receive and collect whatever may remain of the fund and apply the same, or so much thereof as may be necessary for that purpose, to the payment of the judgment which the oratrix has obtained; that it be referred to a master to ascertain the situation of

the fund in June 1832, when Mr. Bigelow died, and of the defendants, and who were members of the society at that time. And if the fund was sufficient, at that time, to satisfy the debt of the oratrix, but is now insufficient, those of the defendants, who were members at that time, must pay whatever the fund, as it now is, falls short of paying the judgment, or the sum which the master may find was good and collectable at that time.