# DAVID C. BALL, Respondent, v. PEPER COTTON PRESS COMPANY et al., Appellants.

### St. Louis Court of Appeals, June 22, 1909.

1. **CORPORATIONS: Stockholders: Dividends: Right of Corporation to Question Validity of Dividends Declared.** In a suit for a dividend declared but never paid, brought by a stockholder of a corporation against the corporation and another stockholder, who had been paid her dividend, and who, as a creditor, had procured an assignment from the corporation of certain assets, the corporation had no right to make the defense in behalf of either plaintiff or its codefendant that its financial condition on the date said dividend was declared was such that the declaration of said dividend was not warranted, inasmuch as the interest of the former was opposed to it and the latter could have made it for herself had she desired to do so.

2. ———: ———: ———: **Declaration of Dividend Creates Debt.** The declaration of a dividend by a corporation creates a debt in favor of stockholders for their respective parts.

3. **LIMITATIONS: Ten-Year Statute: Promise in Writing.** Under section 4272, Revised Statutes 1899, for a writing to be "a promise to pay money" it must contain words which either express a promise to pay or from which a promise may be implied.

4. ———: ———: ———: **Declaration of Dividend by Corporation is "Promise in Writing."** A resolution adopted by the board of directors of a corporation and written on the records of the corporation which provides for the distribution of a certain sum among stockholders, to be paid pro rata, according to the number of shares held by them, accompanied by a credit on the books of the corporation in favor of a stockholder for the amount of his dividend, is a plain promise to pay, within section 4272, Revised Statutes 1899, and an action brought thereon within ten years is not barred by the statute.

5. **APPELLATE PRACTICE: Point Made by Party Not Affected.** A point made in the appellate court, by a party other than the sole party affected, will be overruled without deciding whether it would be good if raised by the right party.

6. **PLEDGE: Pledgor's Interest not Subject to Legal Process.** The interest of a pledgor in a certificate of deposit pledged with a surety company to indemnify it as surety on pledgor's bond is not subject to levy or garnishment on legal process.

Ball v. Cotton Press Co.

7. **EQUITY: Creditor's Bill: Will Reach what Assets.** A creditor's bill will lay hold of the assets the debtor had owned in a legal sense, but which have been incumbered by him so as to make his present interest an equitable one; or such as are not leviable or garnishable, even when his present interest is legal, like his title to property pledged by him, without reference to fraud or other ground of equity cognizance.

8. **TRIAL PRACTICE: Court Cannot Hold Case Open After Final Judgment.** A court of equity cannot, any more than a court of law, hold a case open after judgment for further adjudication on the merits, though it may retain it for administrative purposes, and make orders to carry a decree into effect.

9. **EQUITY: Injunction: Corporation: Restraining Transfer of Assets: Pleading: Prayer for General Relief.** A stockholder of an insolvent corporation brought suit against the corporation for the amount of a dividend declared, but not paid; against the pledgee of an asset of the corporation, pledged to secure a contingent liability; and against one to whom the corporation had, after the institution of said suit, assigned its reversionary interest in said pledge, to subject the pledgor's interest in said pledge to the payment of said dividend. The prayer of the petition was not only for special relief, but for such other and proper relief as the facts might warrant. It was admitted in an agreed statement of facts that the corporation was insolvent; that it owned a certificate of deposit, which had been pledged by it to secure a contingent liability; that several year prior to the institution of the suit its board of directors had declared a dividend, and the plaintiff as a stockholder, had been credited with the amount of his dividend on the books of the corporation, but had never been paid the same; that after the institution of this suit, with the knowledge of all the parties, the directors of said corporation assigned its interest in said certificate to one of the defendants, who also was a stockholder, and that the consideration therefor was credited upon an obligation owing by said corporation to said stockholder; and that plaintiff and said endorsee were the only creditors of said corporation. *Held*, under said prayer and the facts stated in said agreed statement, plaintiff was entitled, when the suit was begun, to have the corporation enjoined from transferring its interest in said certificate to a holder for value.

10. ———: ———: ———: ———. Under such circumstances, and where the judgment of a creditor may be rendered unavailing by a transfer of equitable assets, chancery grants an injunction.

11. **PLEDGE: Pledgor's Interest Assignable.** The contingent interest of the pledger of a certificate of stock, in the hands of a pledgee to indemnify it as surety for pledgor, is assignable in equity.

12. ————: Assignee Acquires Assignor's Rights Only. An as-
signee of equitable assets stands in the shoes of the assignor,
and if a transfer by the latter would be enjoined, a transfer by
the former would likewise be enjoined.

Appeal from St. Louis City Circuit Court,—*Hon. Chas.
C. Allen,* Judge.

REVERSED AND REMANDED (*with directions*)'.

*Judson & Green* for appellant, Peper Cotton
Press; *Jno. H. Overall* for appellant, Annie Taylor
Jones; *R. L. McLaran* for appellant, Fidelity & Deposit
Co. of Maryland.

(1). Plaintiff's amended petition was and is de-
murrable on its face and should have been dismissed be-
cause it fails to state a cause of action, or to disclose any
adequate grounds for equitable relief.   (a)   Because it
appears from the petition that plaintiff is seeking to
reach and hold a strict legal asset (a certificate of de-
posit), by an equitable proceeding in the nature of an
equitable garnishment; and it further appears that the
only hindrance to plaintiff's reaching this certificate of
deposit by a garnishment at law under our statutes is
the fact that it is held by the defendant surety company
as collateral security under a contract of suretyship be-
tween it and the Peper Cotton Press, which contract
was still in full force and effect at the time of the trial
and would, according to its terms, continue in full force
and effect until 1913.   Stevenson v. McFarland, 162 Mo.
159; Johnson v. Publishing Co., 122 Mo. 104; Giest v.
St. Louis, 156 Mo. 643; Smith v. Moore, 35 Ala. 77; Wil-
liams v. Reynolds, 7 Ind. 665; Buford v. Buford, 1 Bibb
(Ky.) 307; Godding v. Pierce, 13 R. I. 532; Noyes v.
Brown, 75 Tex. 458.   (b)   Because the petition on its
face fails to set out any adequate reason for the inter-
vention of a court of equity to assist plaintiff in reach-
ing this legal asset.   In dealing with legal assets equity
follows the law, and when a legal asset cannot be reach-

ed in a garnishment at law because it is subject to conditions and contingencies of contract it cannot be reached in equity. Snell's Equity, 14; Rease v. Bradford, 13 Ala. 846; Williams v. Reynolds, 7 Ind. 665. (c) The form of decree entered by the trial court in this case clearly indicates that plaintiff was not entitled to any relief under the agreed statement of facts, that the suit was prematurely brought and should have been ordered dismissed. State ex rel. v. Crow, 171 Mo. 272; Bartholomew v. Weld, 127 Mass. 210. (d) The decree as entered also indicates that the petition should have been dismissed because it violates that rule of law and equity which requires certainty and finality in all final judgments and decrees. State ex rel. v. Crow, 171 Mo. 272. (e) The decree as entered also indicates that plaintiff's petition should have been dismissed, because it violates that rule of law and equity which prohibits the splitting of demands as it appears from the agreed statement that plaintiff's claims against this certificate if allowed in full only amount to about $1,775, while the certificate of deposit with interest amounts to about $2,200. Therefore, as a result of this decree, if it is allowed to stand, the defendant surety company will be compelled against its consent to account for a portion of this fund to David Ball, and for another portion thereof to the Peper Cotton Press or its assignee, and it is liable to suit by both of said parties on said accounting, while the Peper Cotton Press could not have split this demand or have assigned a portion of its interest therein without the consent of the surety company. Morison v. Dedonato, 76 Mo. App. 643; Bank v. Tracy, 141 Mo. 252. (2) A claim for a dividend declared by resolution of a board of directors of a corporation is governed by the five-year statute of limitations, and it appears from the agreed statement of facts that plaintiff's claim was barred at the time he filed suit. Quattrochi v. Bank, 89 Mo. App. 500; Bridges v. Stephens, 132 Mo. 555; Norman v. Sharp, 35 Mo. 283; Menefee v. Arnold, 51 Mo. 536; Wye

v. Bridge Co., 1 Chancery (1896) 559. (a) Although the resolution of the board declaring the dividend may be evidenced by the written minutes of the board's proceedings, yet this fact does not bring a claim for dividends within the ten year statute of limitations. Quattrochi v. Bank, 89 Mo. App. 500. (3) It appears from the agreed statement that at the time the dividend, which is the basis of plaintiff's claim was declared, by the Peper Cotton Press, that this corporation's capital stock was impaired and it had no surplus or profits out of which it could lawfully declare a dividend, and the dividend was therefore illegally declared. Slayden v. Coal Co., 25 Mo. App. 439; Beyer v. Trust Co., 63 Mo. App. 521. (4) Even if plaintiff were entitled to recover, and to hold this asset in this proceeding, the lower court erred in not also finding and giving defendant, Annie Taylor Jones, a judgment against the Peper Cotton Press for $24,218.84. (5) And being entitled to a judgment against the Peper Cotton Press for that amount, the said defendant, Annie Taylor Jones, was also entitled to share pro rata with plaintiff in proportion to the amounts of their respective claims, the proceeds of said certificate of deposit. Judson v. Walker, 155 Mo. 166; M'Coy v. Insurance Co., 87 Mo. App. 73; St. Louis v. Lumber Co., 114 Mo. 74.

*Stewart, Eliot, Chaplin & Blayney* for respondent.

(1) The bill is not demurrable. (a) The interest of Peper Cotton Press in the certificate of deposit for $2,000 after it was given to the surety company must be either an equity redemption, Fisher v. Patton, 134 Mo. 54, or a legal title burden with a lien in favor of the surety company. (b) Whether such interest be one or the other a judgment creditor of Peper Cotton Press cannot reach it by legal garnishment or attachment, or on execution. (c) Whether such interest be one or the other a creditor can reach it by an equitable creditor's bill. 1 Pomeroy's Equity Jurisprudence, sec.

97; Bispham's Principles of Equity, sec. 525; Frazier v. Barnum, 19 N. J. Eq. 316; Pendleton v. Perkins, 49 Mo. 565. (d) A creditor in a garnishment proceeding or in a creditor's bill may be placed in the shoes of the debtor, and acquire all rights the debtor has as against his debtor. Stevenson v. McFarland, 162 Mo. 159. (e) If a debtor owns an equity of redemption or owns the legal title subject to a lien in favor of a third person in an asset he still may assign, sell and convey his interest in said asset, and equity in favor of debtor's creditor may compel an equitable assignment of the same. Bell v. Mulholland, 90 App. 618; Dunlap v. Insurance Co., 12 Hun 627. (f) In equity assignments of part of a fund are valid. 3 Pomeroy's Equity Jurisprudence, sec. 1280; Johnson Co. v. Bryson, 27 Mo. App. 341; Shubert v. Herzberg, 65 Mo. App. 578. (2) (a) A dividend declared by a corporation creates a relationship of debtor and creditor. McLaran v. Planing Mill, 117 Mo. App. 40. (b) Under the laws of Missouri, a dividend must be declared by the board of directors. R. S. 1899, secs. 1320, 1322. Transactions of the directors are to be kept in writing. R. S. 1899, sec. 1322. (c) Thus, a declaration of a dividend is an action by the board of directors of the corporation, formulated in writing, wherein the directors have created an indebtedness on the part of the corporation to the stockholders; and the resolution declaring the dividend is a writing for the payment of money, and comes within the ten-year Statute of Limitations. Reyburn v. Casey, 29 Mo. 129; Carr v. Thompson, 67 Mo. 476; Howe v. Mittelberg, 96 Mo. App. 490; Turnpike Co. v. Wickliffe, 100 Ky. App. 531; McLaran v. Planing Mill, 117 Mo. App. 40. (d) While it is true that the directors may orally declare a dividend, still this is irregular and not in compliance with the statutes of Missouri requiring that the transactions of the directors be kept in writing. Where such dividend is regularly declared by a resolution of the directors, recorded in the directors' minutes, the resolution itself is the

promise on the part of the corporation to pay, and not the mere evidence of that promise. Wigmore on Evidence, secs. 1661, 2451. (3) (a) A dividend once declared, and creating the relationship of debtor and creditor between the corporation and its stockholder, establishes a debt, and the corporation, without the consent of the creditor, cannot revoke this relationship. McLaran v. Plaining Mill, 117 Mo. App. 49. (b) Even if the corporation has the right to revoke the declaration of the dividend, it cannot do so where it has paid the dividend to all but one of the stockholders, and its action of revocation affects only one stockholder and is intended by the corporation to be a revocation as to that stockholder. (c) A corporation in attempting to set aside a dividend once declared, because it was illegal, for want of profits to justify it, can only so act, if at all, to protect the interests of two classes of persons: first, its stockholders, and if all of the stockholders have acquiesced in the declaration of the dividend, either by accepting the payment of the dividend or by suing for it, manifestly the corporation cannot on behalf of the stockholders claim the dividend to be illegal; second, on behalf of the creditors of the corporation, but if, as in the present case, there be at this time but two creditors of the corporation—one the plaintiff and the other defendant Jones, and the plaintiff acquiesces in the declaration of said dividend, and the defendant Jones is estopped to deny the legality of the dividend, then the corporation in this case has no creditor to protect by asserting that the dividend is illegal. (d) A subsequent stockholder taking her stock, with the knowledge of the declaration of this dividend, and that it had been paid to all of the other stockholders, and that it had been paid, particularly, to the holder of the stock which she had acquired. possessing this knowledge at the time she acquired her own stock, takes the stock with notice, or *cum onere*. Parsons v. Joseph, 92 Ala. 405; Cook on Corporations, sec. 730, notes on page 1577. (4) (a) He who comes

into equity must do so with clean hands.  Or he that hath committed inequity shall not have equity.  (b) He who seeks equity must do equity.

GOODE, J.—On the seventeenth of September, 1895, the directors of the Peper Cotton Press declared a dividend to their stockholders of record September 16, 1895, in the sum of $6,000, to be paid *pro rata* on the number of shares held by them.  The resolution declaring the dividend was duly entered upon the minute books of the company, along with the report of the proceedings of the directors of that date.  The plaintiff appearing to be the owner of 443 shares of the stock of the company, his account on the ledger of the company was credited with $1,500, that being his proportionate part of the declared dividend, and down to the date of the filing of the suit that amount stood on the books of the company to his credit.  It is stated in the petition and admitted in the agreed statement of facts on which the case was tried, that the defendant Peper Cotton Press is utterly insolvent.  It is alleged in the petition and admitted in the agreed statement that at the time of the filing of the petition herein the only property which defendant company owned and possessed subject to execution was a leasehold running from June 15, 1901, to June 15, 1905, with the privilege of four renewals of ten years each, the lease being executed by the board of education of the city of St. Louis to the Peper Cotton Press of a lot of ground in the city of St. Louis upon which the Peper Cotton Press had made improvements.  On this leasehold as well as the rents reserved in the sublease which the Peper Cotton Press had made of the leasehold, the Peper Cotton Press had given three deeds of trust, two of them securing an indebtedness of some $60,000 to Russell E. Gardner, the third securing a note of $24,422.76 to George Taylor Commission Company.  The latter deed of trust with the note secured

141 App.—3

thereby were later transferred to the defendant, Annie Taylor Jones. After the institution of this suit one of the deeds of trust given to Gardner's trustee had been foreclosed and at the foreclosure sale of the property purchased by Annie Taylor Jones. In addition to the property leased from the board of education, the defendant, Peper Cotton Press Company, had also a leasehold of an unimproved part of the city wharf, the lease running for a term of ten years, from the fifth of July, 1903, at an annual rental of $900, this lease not being transferable without the written consent of the harbor and wharf commissioner, the right being reserved to the city of St. Louis to alter, amend or repeal the ordinance and lease at any time. It is averred in the petition in the case that in addition to these leaseholds, "the defendant Peper Cotton Press had also another asset, which was not known by plaintiff at the time he filed said suit, being a contract entered into by defendant Peper Cotton Press and the St. Louis Cotton Compress Company, wherein said St. Louis Cotton Compress Company agreed to pay the Peper Cotton Press the sum of $1,000 per year beginning in 1901 and continuing for twelve years, provided the Peper Cotton Press would not engage in the business of storing and compressing cotton for the term of fifty years, the first five of said $1,000 payments having been already made." It is further averred in the petition that the defendant, Peper Cotton Press, had another asset as follows: "One of the conditions of said ordinance" (referring to the city ordinance before noted), "leasing to the Peper Cotton Press a portion of the unimproved wharf of the city was that the Peper Cotton Press should file with the city of St. Louis a penal bond in the sum of $2,000, with good and sufficient securities, to secure the faithful performance of the terms, conditions, covenants and stipulations of said lease." The bond was filed by the Peper Cotton Press with the defendant Fidelity & Deposit Company of Maryland as surety. The latter company required the

Peper Cotton Press to deposit with it as indemnity against any loss which it might suffer or incur as surety on said bond as aforesaid, the sum of $2,000, that sum being represented by a certificate of deposit of the Boatmen's Bank of the city of St. Louis, Missouri, bearing three per cent interest, it being agreed among other things, between the defendant Peper Cotton Press and the Fidelity & Deposit Company of Maryland that whenever the bond should expire or whenever the defendant Fidelity & Deposit Company was absolved from further liability as surety on the bond, the latter company was to return to the Peper Cotton Press the sum of $2,000, or the certificate of the bank for that amount, subject to whatever offsets, expenses and deductions might have been incured by the Fidelity & Deposit Company as surety on the bond. It is averred in the petition that after the institution of the suit the board of directors of the Peper Cotton Press, at a meeting duly held, and for consideration of $100, had transferred and assigned by quitclaim to Annie Taylor Jones' trustee, all the right, title and interest of the Peper Cotton Press in the lease of the wharf, it being recited in the resolution making the transfer that the Peper Cotton Press was indebted to Mrs. Jones in the sum of $24,422.76, and accrued interest, evidenced by a promissory note of the company of date September 15, 1902, the note bearing six per cent interest per annum, and the $100 endorsed as a credit on the back of the note, the note now being the property of Mrs. Jones and wholly unpaid except the $100, and it being recited in the resolution by which this was done that as the corporation has no money, property or assets of any kind, except a certain certificate of deposit issued by the Boatmen's Bank of St. Louis, Missouri, for the sum of $2,000, and a certain contract between the corporation and the St. Louis Cotton Compress Company, by which contract the Cotton Press Company agreed to pay to the Peper Cotton Press the sum of $1,000 each year until 1912, and that whereas

Mrs. Jones has offered to purchase the certificate of deposit and contract for the price of $2,000 and $6,500 respectively, by endorsing and crediting those amounts on the promissory note above referred to, it was resolved that the Peper Cotton Press assign, sell and transfer and hereby does assign, sell and transfer to Mrs. Jones the certificate of deposit and contract for the sum mentioned above, the president of the company being directed to make the necessary indorsements and transfers to put title in Mrs. Jones, the note being credited with the amounts as aforesaid. It is averred that this had been done, that is that the certificate had been endorsed to Mrs. Jones and credits of $6,500 and $2,000 had been duly entered on the note of the company. It is averred that this transaction between Mrs. Jones and the company was made after the institution of this suit, with the knowledge of all the parties to it, and it is also averred that neither the Peper Cotton Press nor Mrs. Jones has ever secured or attempted to secure the transfer of the leasehold from the harbor and wharf commissioner of the city of St. Louis. It is further averred that the proceeds derived from the sale under the deeds of trust have discharged the debts due to Gardner and that plaintiff and Mrs. Jones are the only creditors of the Peper Cotton Press.

The prayer of the petition is that the court enter up a decree directing the Fidelity & Deposit Company of Maryland, upon the termination of its liability as surety on the bond to pay plaintiff the sum of $2,000, "or so much of it as may at that time remain as due, payable and returnable to the defendant Peper Cotton Press Company, or such part of said sum as may be necessary to pay the aforesaid claim of plaintiff against the Peper Cotton Press, together with the interests, and costs of the action;" and a general prayer for relief.

All the defendants plead the five-year Statute of Limitation in bar of the action. The Peper Cotton Press Company further pleads that on the seventeenth of

September, 1895, it had on hand no profits, surplus or funds of any kind out of which a dividend on its capital stock could be lawfully declared or paid, and that the dividend declared on that date was unlawfully declared as to stockholders and creditors. It also pleads that it is and has long been insolvent and that it has other creditors who are not parties to the action. The Fidelity & Deposit Company, admitting that it holds the $2,000 certificate of deposit in the Boatmen's Bank, avers that it holds it as a condition for the performance by the Peper Cotton Press of all the terms, conditions and covenants of the lease between the city of St. Louis and the Peper Cotton Press; that it has signed the bond as surety for the Peper Cotton Press; that the lease is still in full force, is to continue in full force and effect for a period of ten years from April 8, 1903, and it avers that its liability as surety upon the bond has not been terminated, and it therefore has a right to hold, apply and dispose of said collateral under the terms of its pledge contract, without interference or restraint, and that the same is not subject to equitable garnishment or to the order of court in this proceeding.

Mrs. Jones, in her answer, sets up that she is the owner of the note referred to for $24,422.76, and that there is now due on it, after all credits have been given, $20,218.84. She prays for judgment against the Peper Cotton Press on this account. She avers that the Peper Cotton Press is also indebted to her assignee, the George Taylor Commission Company, in the sum of $4,000 on open account and she demands a further judgment for that amount. She also avers that the Peper Cotton Press is insolvent and out of business and that the only property which it has is this $2,000 certificate of deposit, and she claims that, if the court finds and holds that this certificate of deposit can be subjected to equitable claims of creditors, she is entitled to share ratably in the $2,000 with the plaintiff, both of them being

creditors. The agreed statement practically and substantially covered these facts.

At the conclusion of the hearing the court found the issues for plaintiff and entered a decree in his favor for $1,770, being the $1,500 dividend, with interest thereon at the rate of six per cent per annum from the sixteenth of November, 1904. It was further decreed, "that whatever right, title and interest in and to said certificate of deposit for $2,000 is acquired by assignment, by the defendant Annie Taylor Jones, it is subordinate to and subject to the prior claim of the plaintiff herein, for recourse upon said certificate for payment and satisfaction of his judgment against the Peper Cotton Press." The court further decreed that the "Fidelity & Deposit Company of Maryland, shall, at such time as its liability on said bond may cease, account to the plaintiff herein for said sum of two thousand dollars or the certificate of deposit representing said sum of $2,000; shall render a true and faithful account of all offsets, expenses and deductions, if any, which have been incurred by the said Fidelity & Deposit Company of Maryland, and which are held as charged against said fund of $2,000, or the certificate representing the same. And the whole of said sum, or the balance thereof reduced by said offsets, if any, shall be paid by the said Fidelity & Deposit Company of Maryland, to the plaintiff herein, or so much thereof as may be necessary to satisfy the judgment herein, and upon receipt of an amount sufficient to satisfy the judgment herein, plaintiff shall satisfy his judgment recovered herein, and the receipt of the plaintiff herein, given to the defendant Fidelity & Deposit Company of Maryland, for such sum as shall be paid by said defendant to the plaintiff under and pursuant to this judgment and decree, shall be received and accepted as a full and complete receipt and settlement of the plaintiff, and shall also be a full and complete settlement so far as the amount is concerned, of whatever rights the de-

fendant Annie Taylor Jones may have in and to so much of the fund of $2,000, or the certificate of deposit representing said sum."

The foregoing is an accurate recital of the pleadings, facts and judgment prepared by the presiding judge of this court. The case was submitted by the parties on an agreed statement of facts with the right to object to the relevancy or materiality of any admitted fact. The circumstances stated *supra* as having been alleged in the petition, were agreed to by the parties. Annie Taylor Jones was not at first a party, but she applied to be made a coplaintiff, alleging the Peper Cotton Press Company owed her more than $2,000; that said company was insolvent and had no assets except the certificate of deposit mentioned in plaintiff's petition and held by the Fidelity Company as therein stated, and so it would be useless for her to get judgment against the Peper Cotton Press. This motion was made in June, 1905, and while it was pending plaintiff filed an amended petition making said Annie T. Jones a defendant and alleging certain transfers of property, including the certificate of deposit, by the Peper Company to her subsequent to the institution of this suit. In her answer Annie Jones did not claim the certificate of deposit by virtue of the assignment of it to her by the Peper Company, but only asked the court to allow her, as a creditor of said company, to share *pro rata* with plaintiff, if the court found said certificate could be subjected in equity to the company's debts. In his reply plaintiff alleged she was estopped to demand a prorating in the proceeds of the certificate, because she had taken an assignment of it with notice of plaintiff's suit to have it devoted to paying his demand, and because, further, she had been preferred by the Peper Company's assigning her a contract on which she would be paid $1,000 annually for six years. Certain facts were admitted which tend to show the Peper Cotton Press was insolvent September 16, 1895, when the dividend was declar-

ed, though perhaps this is not a necessary conclusion from the admission regarding its assets. The plaintiff was connected with the company as stockholder from September 16, 1895 to September 17, 1902 and was director and vice-president during said time, but continuously resided in the city of New York and did not attend the meetings of directors or stockholders. He was not present at the directors' meeting when the dividend was declared and never was notified of the declaration of the dividend, nor was any offer made to pay him his part, and he remained in ignorance of the declaration until a few months before the filing of this suit, though, as said, he was credited with his proportion on the books of the company. The only other shareholder at the time besides the directors, who seem to have been but nominal shareholders, was Sarah E. Taylor, executrix, who was paid her part of the dividend shortly after it was declared. On February 20, 1905, defendant Annie Taylor Jones, acquired by transfer and assignment all the shares held by said Sarah E. Taylor, executrix, on September 16, 1895, to-wit, 1327 shares, and acquired them knowing the dividend had been declared on them and that Sarah E. Taylor, as the then owner of the stock, had been paid her part of it. We believe the agreed facts sufficiently appear in the above statement for the decision of the case.

1. We are not favorably impressed with the contention that plaintiff is not entitled to recover his proportion of the dividend because the financial condition of the corporation on September 16, 1895, did not warrant the directors to declare a dividend. The only party making this defense is the Peper Cotton Press itself. It is not interposed by Annie Taylor Jones either as a creditor or shareholder of the corporation, nor by the Fidelity & Deposit Company of Maryland, which could have no interest in the matter. No creditor of the corporation complained and it does not appear there were any creditors at the time. All the stockholders, except

plaintiff and Sarah E. Taylor, were directors who participated in declaring the dividend, and all but plaintiff accepted their parts years ago. In truth the only real stockholders at the time were Sarah E. Taylor and plaintiff; the only ones now are plaintiff and Annie Taylor Jones, and the only creditors are those two. The corporation had no right to make this defense in behalf of either plaintiff or Annie T. Jones. The interest of the former is opposed to it, and the latter is a defendant and could have made it for herself had she desired to avail herself of it.

2. The defendants set up the Statute of Limitations in their separate answers, contending plaintiff's cause of action for his dividend accrued more than five years prior to the institution of the present suit and was barred. In response plaintiff's counsel say the written declaration of a dividend by a business corporation, is a promise in writing to pay money and falls within the ten-year Statute of Limitations. The agreed statement of facts quotes from the record of the company showing the meeting of the directors September 17, 1895, a report of the secretary about the profits during the preceding twelve months, and a recommendation of the disposition to be made of the net profits. So far as is material this record is as follows: "The secretary presented a statement of the profits of the company covering the period of twelve months ending August 31, 1895, showing a net profit of $37,922.22, and that the disposition of the same according to the agreement in force between the Peper Cotton Press and the parties sharing therein should be as follows: 1st. To the stockholders of record September 16, 1895, the sum of $6,000, to be paid *pro rata* according to the number of shares held by them. . . . On motion said report was received, approved and filed and a division of profits was on motion made, seconded and carried, directed to be made as above recited." The agreed statement of facts further recites "that upon the declara-

tion of said dividend, the plaintiff's account on the ledger of the Peper Cotton Press Company was credited with said sum of $1,500 and said sum still stands to his credit on said books." After the declaration of the dividend the corporation was indebted to plaintiff for his part. [McLaran v. Planing Mill, 117 Mo. App. 40.] The question for decision is whether the minutes and entries recited from the books of the Peper Cotton Press constituted a promise in writing to pay plaintiff his part, in the meaning of the statute which says an action "upon any writing, whether sealed or unsealed, for the payment of money or property, shall be commenced within ten years." [R. S. 1899, sec. 4272.] Our statutes say the transactions at meetings of boards of directors of private corporations shall be recorded and access to the records afforded stockholders at all reasonable times. [R. S. 1899, secs. 1320, 1322.] Hence the record of the declaration of the dividend was in conformity to the law. In order for a writing to be a promise to pay money in the sense of the ten years' limitation section, the writing must contain words which either express a promise to pay or from which a promise may be implied. [Reyburn v. Casey, 29 Mo. 129; Carr v. Thompson, 67 Mo. 472; Howe v. Mittleberg, 96 Mo. App. 490.] What was written in the record of the meeting of the directors of the Peper Company imported a promise to pay plaintiff $1,500 as his part of the dividend. This is the conclusion to be drawn from the language of the resolution adopted by the directors, namely, "that the disposition of the same (the net profits shown by the secretary's report) according to the agreement in force between the Peper Cotton Press and the parties sharing therein, should be as follows: 1st. To the stockholders of record September 16, 1895, the sum of $6,000, *to be paid pro rata according to the number of shares held by them.*" That was a plain promise to pay and was accompanied by a credit in favor of plaintiff of the sum due him. [Mc-

Laran v. Planing Mill, *supra;* Winchester v. Wickliffe, 100 Ky. 531.] In the case last cited, the Kentucky Court of Appeals passed on the point in hand with reference to a limitation statute which read: "Any action or suit upon a recognizance, bond or written contract . . . or upon a bond or obligation for the payment of money or property, or for the performance of any undertaking, shall be commenced within fifteen years after the cause of action first accrued." The case was instituted October 16, 1894, by an administrator, to recover dividends declared for the years from 1877 to 1899, inclusive, and due from the turnpike company to his decedent. A five years limitation statute was interposed in defense. It was held the fifteen-year statute controlled; meaning, of course, that clause of it which said an action on a bond or obligation for the payment of money should be commenced within fifteen years after the cause of action first accrued. Said section is not different from our own, except the period of limitation is fifteen instead of ten years. The present action was instituted about nine years after the declaration of the dividend and is not barred.

3. The point now made that the demand against the Fidelity & Deposit Company on account of the certificate will be split if plaintiff, as creditor of the Peper Cotton Press, is allowed a right to recover the Peper Company's interest, was not set up in defense by the Fidelity Company, the only party that would be affected. Hence this assignment of error will be overruled, without deciding whether or not it would be good if raised by the right party. [Johnson County v. Bryson, 27 Mo. App. 341, 349.]

4. It is insisted for defendants the certificate of deposit issued by the Boatmen's Bank to the Peper Company, and turned over by the latter to the Fidelity & Deposit Company of Maryland to indemnify it against loss as surety for the Peper Company, is not an asset that can be reached by a petition in the nature of a

creditor's bill or equitable garnishment. The argument on this point presents two phases. In the first place it is said the certificate of deposit, or the interest of the Peper Company in it, is a legal asset and hence not to be reached by a proceeding in equity. We reject this contention. To our minds it is clear the certificate was pledged by the Peper Company to the Fidelity & Deposit Company, and the former has a vested interest in it subject to the lien of the latter—an equity of redemption, we think (Perry v. Craig, 3 Mo. 516; Gaty v. Holliday, 8 Mo. App. 118; 22 Ency. Law (2 Ed.), 87); at any rate an interest not subject to levy or garnishment on legal process. The language of the certificate of deposit is not preserved; but we suppose, and the arguments of counsel imply, it was a promise by the Boatmen's Bank to pay to the Peper Cotton Press the sum of $2,000 with three per cent interest, at a date not named in the agreed statement, which, however, gives the condition of the pledge—an agreement between the Peper Company and the Fidelity & Deposit Company that whenever the bond on which the latter was surety should expire, or it was absolved from further liability as surety, it should turn over to the Peper Company the sum of $2,000, or said certificate of deposit, subject to whatever expenses or deductions might have been incurred as surety on the bond. All the books and cases, as far as we know, treat commercial paper thus hypothecated and in the hands of the pledgee, as not subject to legal process in the absence of an enabling statute, and we have none. [Sexton v. Monks, 16 Mo. 156; Jones, Pledges and Col. Sec. (2 Ed.), secs. 372, 373, and citations in notes.] The text of the treatise says "though the pledgor has the general ownership, and, in general, the legal title, yet possession being in the pledgee, the former has strictly only the right to redeem; and neither he nor any one in his right, can regain possession, or a right to it, except on payment or tender of payment, of the amount for which the

property is held in pledge." The argument for defendants on this branch of the case assumes a creditor's bill is not the proper remedy under any circumstances to reach assets whereof the debtor originally held the legal title, but extends only to assets, the title to which was vested in somebody else and the equitable interest in the debtor; that is, property held in trust for the debtor. No doubt a creditor's bill will lay hold of assets of the latter species, but it will reach those the debtor had owned in a legal sense and which he had incumbered so as to make his present interest an equitable one, or such as are not leviable or garnishable even when his interest in still legal, like his title to property pledged by him. [Bispham's Equity, sec. 325.] In treating the subject of Creditor's Bills, a standard work says as a rule every species of property belonging to the debtor which is inaccessible on execution, can be subjected in equity for the satisfaction of his debts. [5 Ency. Pl. and Pr. 439.] Many States have enacted statutes bringing such interests within the reach of executions, attachments and garnishments; but, as said, we have no statute of the kind, and when this is true, the remedy is in equity. [Jones, sec. 372; Ritchie v. McMullen, 79 Fed. 522; Frazier v. Barnum, 19 N. J. Eq. 316.] The Supreme Court of Missouri had occasion to pass on the power of chancery to subject assets not leviable to the payment of creditors in the case of Pendleton v. Perkins, 49 Mo. 565—a suit to compel the city of St. Louis to pay the plaintiff a debt due by an insolvent who had absconded leaving money in the city treasury. The municipality was exempt from legal garnishment, but the court held not from equitable garnishment by creditor's bill. With that part of the case we have no concern, but only with the proposition declared by the court, that a creditor's bill would lie to subject a fund or chose in action of a debtor to the satisfaction of his creditor, without showing fraud or some other recognized ground of equity jurisdiction.

The opinion says the courts of chancery of other States having no statute authorizing the garnishment of equitable interests lend "their aid to enable creditors to subject property and mortgages, including choses in action, to the satisfaction of judgments, when they cannot be reached by execution, and when the execution cannot be otherwise satisfied." After examining decisions pro and con, mostly of the New York courts, our Supreme Court said: "The affirmation of the proposition that a judgment creditor, who has exhausted every ordinary means to satisfy his judgment, should have the aid of the court, in analogy to its ancient chancery jurisdiction, to reach his debtor's funds, whether fraudulently withdrawn or concealed or not, seems to be necessarily inferred from the main object or chancery jurisdiction—to furnish a remedy when the strict rules of legal practice fail." The authorities reviewed were Haddon v. Spader, 20 John. 554; Donovan v. Finn, 1 Hopkins Ch. 59; Edmonston v. Hyde, 1 Paige Ch. 637; Tarbell v. Griggs, 3 Paige, 207; Bigelow v. Society, 11 Vt. 283; William v. Hubbard, Watkins Ch. 28. The effect of all those decisions, except Donovan v. Finn, is in accord with the doctrine declared in the excerpt from the opinion of the Supreme Court of Missouri, and this is the common doctrine at the present day. See 5 Ency. Pl. and Pr., 439, et seq.; Waite, Fraud. Con. and Cred. Bills. (3 Ed.), sec. 33 and cases cited in note 4; also Dunlop v. Insurance Co., 12 Hun 627, 74 N. Y. 145, an instructive case and like this one, but governed, it seems, by a New York statute authorizing the garnishment on legal process of equitable interests. Though the ruling in Pendleton v. Perkins that a municipality may be made an equitable garnishee has been commented on with doubt in later opinions, the ruling has never been questioned that a creditor's bill will reach such assets of a debtor as are not subject to levy and garnishment, without reference to fraud or other ground of equity cognizance.

The second phase of the argument that the interest of said company in the certificate of deposit cannot be appropriated, either in law or equity, to satisfy plaintiff's demand, is grounded on the contingent nature of the interest of the Peper Company in the asset, which is said to be so remote and uncertain as to withdraw the asset from the range of any remedy plaintiff might seek, because until the Fidelity & Deposit Company's liability as surety terminates, it cannot be ascertained whether the Peper Company will have any equity in the certificate, or, if any, how much. We are cited to Stevenson v. McFarland, 162 Mo. 159, as supporting the proposition; an authority which differs widely in its facts from the case at bar. It was an action in the nature of an equitable garnishment by a judgment creditor of McFarland's to lay hold of his interest in a contract between him and Vette, according to the terms of which Vette was to pay McFarland, in return for services to be rendered, twenty-five per cent of the profits of a loan and real estate business during three years. A man named Kilgen was interested with McFarland in the contract. The business was in progress when the action was begun and the agreement provided McFarland and Kilgen could not draw more than $100 per month each *"until and unless, upon the termination of this contract,* it shall be ascertained by collection of all outstandings that the net profits arising to each shall have been in excess of the sums so respectively drawn by them." It is perfectly manifest there was no way for the court to determine whether Vette would be entitled to anything, inasmuch as, under the terms of the contract, his interest was not to be ascertained until the expiration of a stated period. Hence the court could enter no decree appropriating any certain interest to satisfy plaintiff's judgments. In the case at bar we have a fund of more than $2,000 with the accumulated interest, in the hands of the Fidelity & Deposit Company to in-

demnify the latter as surety on a contract which was to run ten years from April 8, 1903. The lease will not expire until April 8, 1913, and meanwhile the Surety Company may be mulcted so as to entitle it to retain as indemnity all or part of the proceeds of the certificate. We are dealing with a positive asset already in existence, and not a mere chance or possibility which may or may not become a reality in the future; and in this respect, which is important to the point ruled in the next paragraph, the case is unlike Stevenson v. McFarland. Nevertheless it falls within the principle of that decision. It is impossible to know what losses the Fidelity Company may sustain before its obligation as surety expires, or what claim of loss it may make which the Peper Company or plaintiff will not concede. The Fidelity Company may insist then it has sustained losses and the Peper Company dispute the claim. Hence, while the right as between plaintiff and the Peper Company and as between plaintiff and Annie Taylor Jones, can now be determined, questions which cannot be may arise between the Peper Company as principal and the Fidelity Company as surety, and even between the latter and plaintiff and Annie Jones as creditors of the Peper Company. And, indeed, the judgment entered in the case suggests the court was conscious of this fact, for it did not finally settle and determine the rights of the parties. Instead of doing so, it adjudged the Fidelity Company, when its liability on the bond "shall cease, shall render a true and faithful account of all offsets, expenses and deductions, if any, which have been incurred by the said Fidelity & Deposit Company of Maryland, and which was held as charges against said fund of two thousand dollars, or the certificate representing the same. And the whole of said sum, or the balance thereof reduced by said offsets, if any, shall be paid by the said Fidelity & Deposit Company of Maryland, to the plaintiff herein, and upon receipt of an amount suffi-

cient to satisfy the judgment herein, plaintiff shall satisfy his judgment recovered herein, and the receipt of the plaintiff herein, given to the defendant Fidelity & Deposit Company of Maryland, for such sum as shall be paid by said defendant to the plaintiff under and pursuant to this judgment and decree, shall be received and accepted as a full and complete receipt and settlement of the plaintiff, and shall also be a full and complete settlement, so far as the amount is concerned, of whatever rights the defendant Annie Taylor Jones may have in and to so much of the fund of two thousand dollars, or the certificate of deposit representing said sum." That judgment undertakes to make a re-ceipt from plaintiff to the Fidelity Company an acquittance of the latter's responsibility for the certificate now in pledge. But if the Peper Company or Annie Taylor Jones should contest the amount retained by the Fidelity Company, on the ground it had not paid said amount as surety, said judgment would not settle the matter.

5. The theory that this case can be retained until the expiration of the lease in order to preserve the *status quo,* and a supplemental petition then be filed setting up the facts regarding what the Fidelity Company has paid as surety and its right to indemnity, is opposed to the decision of the Supreme Court in St. Louis v. Crow, 171 Mo. 272, wherein it was said a court of equity no more than a court of law, could hold a case open after judgment for further adjudication on the merits, though it might retain it for administrative purposes and make orders to carry a decree into effect. The rights of these parties in the certificate of deposit cannot be settled presently by a final judgment; and according to said case the cause cannot be held, but must be treated as premature in so far as it calls for an ascertainment of their respective interests in the certificate.

But because the asset in controversy is *in esse,*

and of a kind equity will lay hold of to satisfy plaintiff's demand, when the Peper Company's interest can be ascertained, no further assignment of said interest, whereby it will be put beyond plaintiff's reach at the proper time, ought to be permitted, if it can be prevented. He prayed not only for special relief, but for such other and proper relief as the facts might warrant; and under said prayer and the agreed facts, he was entitled, when the suit was begun, to enjoin the Peper Cotton Press from transferring its interest in the certificate to a holder for value. In equity such contingent interests and expectancies are assignable; and, indeed, Annie T. Jones, the real contestant, claims under an assignment. [22 Ency. Law (2 Ed.), 879; Johnson Co. v. Bryson, 27 Mo. App. 341; Bell v. Mulholland, 90 Mo. App. 612; American, etc., Co. v. Hartinge, 73 Ga. 223; Lincoln v. Linde, 72 Abb. N. Cas. 278; Dunlap v. Insurance Co., 74 N. Y. 145.] As she acquired her title after this suit was begun it would be unfair to permit her to take the whole amount of the certificate to the exclusion of plaintiff. She does not assert the right to do this if plaintiff is entitled to a judgment for his dividend, but only the right to share with him in proportion to her claim as creditor of the Peper Company. As plaintiff could enjoin a transfer by said company to his prejudice, and as she stands in the shoes of the company, he may enjoin a transfer by her. In circumstances like those at bar, and where the judgment of a creditor may be rendered unavailing by a transfer of equitable assets, chancery grants an injunction. [Orr v. Peters, 197 Pa. St. 606; Deveau v. Fowler, 2 Paige Ch. 400; Johnson v. Woodruff, 8 Halst. Ch. 120; High, Injunctions (4 Ed.), 330, 471, 1342.]

6. No point has been raised against the right of plaintiff to proceed in equity without having first obtained a judgment at law, and as to this we say nothing. If he takes further steps against the certificate

when it is released from the lien of the Fidelity & Deposit Company, it may then be determined whether Annie Taylor Jones is entitled, as creditor of the Peper Cotton Press, to share in said certificate *pro rata* with plaintiff.

The judgment of the court below is reversed and the cause remanded with directions to enter judgment for plaintiff against the Peper Cotton Press for the amount of his dividend and interest from November 16, 1904, and enjoining the Peper Cotton Press, Annie Taylor Jones and the Fidelity & Deposit Company, from making any transfer or disposition of the certificate of deposit to the prejudice of plaintiff's rights while the obligation of said Fidelity & Deposit Company as surety for the Peper Cotton Press continues.   All concur.